An action for personal injury from collision of a train with a team at a railroad crossing, if difficult, is not extraordinary, within Code Civ. Proc. § 3253, authorizing an extra allowance of costs in a difficult and extraordinary case.

Appeal from special term, Ontario county.

Action by Porter D. Smith against the Lehigh Valley Railroad Company for damages for personal injuries to plaintiff from a collision at a railroad crossing of a train with his carriage. From an order granting plaintiff an extra allowance of costs of $400 (being 5 per cent. on the verdict of $8,000 recovered by plaintiff), defendant appeals. Reversed.

See 79 N. Y. Supp. 106, 1147.

Argued before McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Martin Carey and James McC. Mitchell, for appellant.
Thomas Raines, for respondent.

WILLIAMS, J. The order should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs.

In order to authorize the granting of an extra allowance, a case must be both difficult and extraordinary. Code Civ. Proc. § 3253. While a railroad crossing accident case may be difficult and require much labor and expense in the trial, such a case cannot be said, in any sense, to be extraordinary. Cases of this kind are very common. Our courts are continually trying them and reviewing them on appeal. Extra allowances should not be granted in these cases unless they come clearly within the provisions of the statute. The verdicts are ordinarily large enough, and create a sufficient burden upon the railroads, without granting extra allowances. In this case the plaintiff is adequately compensated in the verdict and the statutory costs. The order should therefore be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.

Order reversed, with $10 costs and disbursements, and motion denied. All concur.

(39 Misc. Rep. 559.)

## BURDEN v. BURDEN IRON CO. et al.

(Supreme Court, Trial Term, Rensselaer County. January, 1903.)

1. CORPORATION—CONTRACT WITH PRESIDENT—VALIDITY.

The majority of the trustees of a manufacturing corporation passed a resolution by the terms of which the president, who did not vote, entered into a contract with it to license it for five years, and for a fair royalty, to make and use certain machines, containing new inventions made by him. *Held*, that the contract was valid, and not subject to an attack by a stockholder as fraudulent.

**2. SAME—INVENTIONS OF PRESIDENT.**

A corporation has no actual or implied license to use patented inventions of its president without compensation to him, though the experimental work was done by the employés of the corporation, but paid for by the president with his own money.

**3. PARTNERSHIP.**

A firm has no right to use the inventions of a partner without compensation, though its use might be a benefit to the business.

Action by I. Townsend Burden against the Burden Iron Company and others. Judgment for defendants.

Countryman & Du Bois (Robert W. Hardie and Frank S. Black, of counsel), for plaintiff.

William J. & E. G. Roche (Charles Neave, Frederick P. Fish, and Austen G. Fox, of counsel), for defendants.

BETTS, J. The testimony in this action was taken before Mr. Justice Chase while he was a trial justice, but prior to his decision thereof he was appointed a member of the appellate division. Upon stipulation by the attorneys, the case was submitted to me upon the record as made up by Justice Chase. The time necessarily consumed in the examination of the very voluminous record and the authorities cited by the respective attorneys has been such, in order to intelligently pass upon the proposed findings submitted, that I shall give only a very brief opinion, embodying some of the reasons for the action taken.

In a prior action between substantially the same parties, the character of the corporation, the history of its formation, its business, and much information concerning the principal parties to this action, were fully set forth. Reference is therefore made to those decisions of the courts in that action, found in 8 App. Div. 160, 40 N. Y. Supp. 499, and 159 N. Y. 287, 54 N. E. 17. This action was commenced some time before the decision of the court of appeals was handed down in that case. In January, 1898, at a meeting of the board of trustees of the defendant the Burden Iron Company, a resolution was passed by which it was decided to enter into a contract or agreement with the defendant James A. Burden, for a term of five years, for the license by the said company to make and use machines containing inventions described in certain letters patent claimed to be owned by said defendant James A. Burden, and referred to throughout this action as the patents of 1887, 1894, and 1895. For this license the company was to pay said James A. Burden the sum of eight cents for each keg of 100 pounds of horseshoes manufactured by the use of the inventions secured by said letters patent. This agreement was subsequently executed. It is so short, and reference thereto will be so frequent in this opinion, that it is here inserted in full. It is as follows:

"This agreement, made the 5th day of January, 1898, between James A. Burden, of the city of Troy, county of Rensselaer, and state of New York, of the first part, and the Burden Iron Company, of the same place, hereinafter called the 'Company,' of the second part. Whereas, the said James A. Burden has procured and is now the owner of the following letters patent

¶ 3. See Patents, vol. 38, Cent. Dig. § 301.

of the United States, to wit: Letters patent, dated November 15, 1887, No. 373,125; letters patent dated August 14, 1894, No. 524,307; letters patent dated January 1, 1895, No. 531,903; said letters patent being all for new and useful improvements in horeshoe machines. And whereas, the said company is desirous of obtaining a license to make and use machines containing the several inventions described and claimed in the said letters patent for the term of years hereinafter stated: Now, this agreement witnesseth that, in consideration of the covenants of said company hereinafter contained, the said James A. Burden has licensed, and does hereby license, the said company to make and use horseshoe machines containing the inventions described and claimed in the said several letters patent at their works in the city of Troy, New York, for the full term of five years from the date of this instrument. And the said James A. Burden covenants and agrees that during the existence of this contract, and the faithful performance thereof, on its part, by the said company, he will not assign the said patents, or either of them, nor grant licenses thereunder to any party other than the said company. And the said James A. Burden further covenants and agrees that in case of infringement by other parties upon said letters patent, or either of them, during the existence of this contract, he will, at the request of the company, take the proper legal steps to put an end to said infringements in his own name and at his own expense. And in consideration of the above license and covenants, the said company hereby agrees to pay to the said James A. Burden, as a royalty for the privilege of making and using the said patented inventions, the sum of eight cents for each keg of one hundred pounds of horseshoes manufactured by the use of the inventions secured by all or either of the said letters patent, after the execution and during the existence of this agreement. And the company further covenants and agrees that upon each first day of April, July, October, and January, during the existence of this agreement, it will render to the said James A. Burden a just and full account of all the horseshoes manufactured by the use of said patented inventions by the company during the preceding three months, and that, within fifteen days after the rendering of such account, it will pay to him the royalties upon the same as provided by this contract. In witness whereof, the parties to these presents have hereunto set their hands and seals the day and year first above written.

"James A. Burden.

"The Burden Iron Company,
            "By Nicholas J. Gable,
                      "Secretary."

James A. Burden was at that time, is now, and has been since the incorporation of the Burden Iron Company, in 1881, the president thereof. He did not attend this meeting. The meeting was attended by the four other trustees, I. Townsend Burden, the plaintiff, and the defendants John L. Arts, Nicholas J. Gable, and James A. Burden, Jr. The plaintiff voted against this resolution. The other three trustees for it. At that time the plaintiff owned 998 shares of the stock of the corporation; the defendants James A. Burden owned 998 shares; John L. Arts, 2 shares; and Nicholas J. Gable and James A. Burden, Jr., each, 1 share. The plaintiff, as a stockholder, brings this action to have that agreement of January 5, 1898, adjudged to be fraudulent, illegal, null, and void, and of no effect, and that the same be delivered up to be canceled; that said three letters patent be adjudged to be null and void and of no force and effect as against the plaintiff and the defendant the Burden Iron Company, and that the defendant the Burden Iron Company be adjudged to be the real and lawful owner of the letters patent, and the inventions secured thereby, and that the same be assigned to the defendant the Burden Iron Company, and that said James A. Burden be ad-

judged not to be the discoverer of the said inventions or devices, and that the resolution of the board of trustees of January 5, 1898, be adjudged to be fraudulent, illegal, null and void, and of no effect; and that the defendants be enjoined from paying to the defendant James A. Burden any royalties under said resolution or agreement, or for or on account of said letters patent, or the improvements or devices secured thereby.

This action is based on fraud. The plaintiff claims that this resolution authorizing this contract, and the contract made thereunder, was fraudulent, as to him and as to the Burden Iron Company, for the reasons, among others, that the defendant James A. Burden was not the inventor of the devices or methods described in these letters patent, and that each of the different trustees present at this meeting which passed this resolution authorizing the execution of this agreement knew of this fact as well as did James A. Burden himself; also that the patents were invalid for the reason that James A. Burden was not the inventor; that there was no patentable novelty secured by either one of them; that the real inventor or inventors were employés of the defendant company, or its preceding firm; that the devices or inventions secured thereby had been in public use more than two years prior to the application for these several letters patent. He also claims that, in any event, there was a license on the part of the Burden Iron Company to use the machines, devices, or methods secured by these patents, so, even if valid, this defendant, James A. Burden, was not entitled to any royalty thereunder, and that these facts were well known to these trustees who directed this contract to be entered into, and subsequently entered into the same on behalf of the defendant the Burden Iron Company. It is stoutly contended by the defendants that this issue of fraud is the only issue in this case; that, having asserted this fraud, the plaintiff must maintain the same, unless he does so by showing by a preponderance of evidence that these trustees who took this action on the part of the company were aware of such fraud, and participated in it. This court is not called upon to decide whether these patents are valid or otherwise, or whether James A. Burden is the inventor or not, and the numerous other questions growing out of these two principal ones.

It is also claimed on behalf of the defendants that the validity of these three patents cannot thus be attacked in a collateral action. The defendants cite the case of Marston v. Swett, 66 N. Y. 206, 23 Am. Rep. 43; Id., 82 N. Y. 526, in support of this claim. The rule in that case is held to be substantially as follows: That where the parties were the assignees of a patent supposed by all of them to be valid and in force, and some of the assignees thereof agreed with the remaining assignees that the second parties should have the exclusive use and benefit thereof, and such exclusive use is had, and the first parties refrain from any use, the parties" receiving the benefit of its supposed validity are liable for royalties agreed to be paid, and cannot set up as a defense the actual invalidity of the patent. The reasons for the rule are that the party has got what he bargained for, that he cannot be allowed at the same time to affirm and disaffirm the patent, and that he cannot in this way force the

patentee into a defense of his right, and compel him to try it in a collateral action." Numerous English cases are there cited as being in harmony with this view, and it is stated that these cases "steadily resisted all attempts of licensees under patents apparently valid to raise the question of their validity."

While I concede that there is much force in these contentions of the defendants, still there is a distinction between Marston v. Swett, supra, and this case, in the fact that it would be impossible for this patent to be void, for the reason that James A. Burden was not the inventor thereof under the circumstances claimed by the plaintiff, without said James A. Burden having full knowledge thereof, so that if this one, at least, of the plaintiff's contentions were true, there would be a trustee of the defendant company individually entering into a contract with it, and receiving royalties therefrom, and giving nothing in exchange therefor,—in other words, a contract without consideration. So I have concluded, on account of the involved relation of the parties to this action and to this contract, that the ends of justice would be best subserved by fully deciding the issues presented by the pleadings and the record here.

One of the pivotal questions is whether James A. Burden was the inventor or not,—whether he, or some one or more of the employés of himself or the Burden Iron Company, invented these devices or methods covered by the three patents in dispute. There is quite a seeming contradiction in the testimony, as shown by this record. This court has not had the advantage of seeing any of these witnesses, so that much careful study has been required to ascertain where the truth lies. It is not my purpose to go in detail into the evidence submitted. Suffice it to say that I consider it clearly shown from the entire evidence that James A. Burden was the inventor of these three disputed patents. The work undisputably done by the others in connection with the machines or devices erected from the specifications of such letters patent, the suggestions, the framing and construction of mechanical parts of said devices during the experimental stages, were such work, and such work only, as would be expected to be and is done by mechanics skilled in the arts, in carrying out the instructions of the inventor, in whatever manner such instructions are conveyed. His mind conceived the idea. He saw the completed machine or method, and the skilled mechanic was called in to frame and construct in wood or metal the model or machine. All this was accompanied by the usual number of practical errors, failures, and mistakes that are attendant upon the construction of such complicated machinery, and the adaptation of ideas to actual operation. Some of the men who assisted were very skillful, and testified that their ideas, rather than James A. Burden's, conceived the inventions. But numerous contradictions, changes of testimony, and a vivid memory at one time, and an unreliable one at other times, together with the evidence produced by the defendants, lead me to the conclusion that the patentee was the inventor. Blandy v. Griffith, 3 Fed. Cas. 676–678 (No. 1,529); Agawam Co. v. Jordan, 7 Wall. 583, 19 L. Ed. 177. The presumption arising from the oath of the applicant that he believes himself to be the first inventor or discoverer of the thing

for which he seeks letters patent remains until the contrary is proved. Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000.

It has been contended that, even if James A. Burden was the inventor of the patents, they ought of right to belong to the corporation, since he was president of the company, or a copartner with plaintiff, at the time of the inventions. But he was serving as president without salary, and was under no obligation to perform any such services for the company, or to give to it the results of his inventive genius. We shall show later that the fact that he was ·a copartner with plaintiff at the time of the invention gave the firm or the succeeding corporation no title to or interest in the invention of James A. Burden. Hence we have the inventor of these three devices or methods applying for and obtaining a patent upon his own inventions, and being the owner of such patents.

Henry Burden, the father of James A. and I. Townsend Burden, died in 1871. At the time of his death the horseshoe machines then in use, and called in this case the Henry Burden Machine, did not turn out a horseshoe that was considered by his sons to be up to the requirements of the trade, nor was it considered to be such a shoe as was necessary to enable them to stand the strong competition then beginning to be felt of other horseshoe manufacturers, so that a machine was built called the "Swaging Machine." The horseshoes, after passing through the Henry Burden machine, were passed through this swaging machine, and certain roughness and irregularities were taken from them. This enabled the company to keep its business for some years, but, the stress of competition again becoming greater, the improvements secured by these three patents in question were made upon the swaging machine, so that this one machine did the work·formerly done by the Henry Burden machine and the swaging machine. Experiments with this "new machine" (so called in the testimony), or the "new process," as some times referred to, were continuous until about the year 1897; that is to say, some parts of it were found to be satisfactory before that time, but improvements and mechanical changes were made during portions of that period, and also the necessary additions or changes were made, so it was about the year 1897 before it was completed, and the large number of varieties of horseshoes in 1898 manufactured by the company were enabled to be turned out by it. Some time before this James A. Burden had told certain of the trustees of the Burden Iron Company that he should expect a royalty from the machines perfected from his patents, when completed; so we find him in the fall of 1897 demanding from the defendant Arts, the general manager and superintendent of the defendant the Burden Iron Company, such royalty. For the very comprehensive powers exercised by Arts in this company, reference may be had to the decisions hereinbefore quoted in the prior action between these parties. The amount of royalties desired was not stated by Mr. Burden, but Arts, apparently acting in behalf of the company, set about ascertaining this amount, and the propriety of the payment of any royalty, in an apparently fair way. He consulted the late Esek Cowen, who had been the attorney for the company for many years, and who

had also at different times been the attorney for both the plaintiff and the defendant James A. Burden, concerning the matter. Cowen went to Washington and made investigations concerning the patents. Arts investigated the books of the company, to ascertain what saving, if any, had been made by the company under the use of what he calls the "new process," which was the manufacture of the horseshoes by this company with the new horseshoe machine, instead of with the old or Henry Burden machine and the swaging machine; and after eliminating whatever he and his assistant considered might be doubtful savings, or savings which were so involved that it was not clear what proportion thereof might be ascribed to the new process, he concluded that about 11 cents per keg was the saving to the company by this new process, but he decided, for greater safety and protection, that 8 cents per keg should be the maximum amount of royalty paid. The other trustees, aside from James A. Burden and I. Townsend Burden, agreed with him. Mr. Cowen returned from Washington, and reported the patents all right, and he also advised that it was right for this agreement to be entered into. James A. Burden objected to the amount of the royalty, claiming it was too small, but eventually agreed, and the contract was entered into. The three defendant trustees testified, in substance, that they passed the resolution and entered into the contract in question for the company in good faith, that they made or had made an investigation which satisfied them that it was fair and right for James A. Burden to have this royalty, and that the amount was not excessive, but fair and just. The method adopted by the trustees to ascertain what was a fair amount of royalty—they having determined, in the first instance, that a royalty should be paid—seems to have been a practical and fair one. Testimony has been taken, and tables introduced in evidence, showing in detail the methods used and the results arrived at. No successful criticism has been made by the plaintiff upon the method used; nor has he shown any better method of arriving at the amount of savings, or at what would be a fair royalty, if any royalty should be paid, although he objects on the ground that the royalty is excessive. Certainly a great saving has been shown in the expense of manufacturing horseshoes by this company since the adoption of these new machines or this new process. The defendants claim that this saving of expense came from the adoption of the new process or the new machines secured to the company by the use of these three patents. The plaintiff denies this, yet he does not dispute that a saving has been effected, and he does not show that it was reached by any other means; so I must and do conclude that the saving was accomplished by this new process, or by the use of these new machines secured by these patents, and that the royalty agreed to be paid was fair, and not excessive. In any event, this matter was something within the province of the board of trustees to ascertain and act upon. They were acting within their powers. They have not been shown to have exceeded their powers, nor have they been shown, in regard to this royalty, to have acted unjustly, fraudulently, or dishonestly either toward this plaintiff or the defendant the Burden Iron Company; but the expenses have

been shown to be greatly reduced, and the income to have been increased. They ascribe this to the adoption of this new process, and the court agrees with them.

As to the objection that these patents, or one or more of them, were invalid because there was no patentable novelty secured by them, the facts seem to be substantially as follows: These new machines are built upon what was formerly the swaging machine. They are now used to manufacture what is called in this case the "standard shoe," and also a shoe called the snow, mud, or easy shoe. The principal business of the company is in manufacturing the standard shoe. In making these two different kinds of shoes, different parts of the inventions secured by these patents are used. Some of these parts had been in use before, but it is claimed by the defendants that the combinations or the methods in each case were new; and much evidence has been given to sustain this contention, and it apparently does so. In addition to the evidence presented here, we have the action of the patent office, declaring that this was a patentable novelty. The action of the patent office alone presents a prima facie case of the patentable novelty of these inventions or processes, that must be met and overcome by the plaintiff before the defendants would be called upon in this collateral action to furnish any proof; and I do not think that the plaintiff has satisfied this burden thus upon him, even to disturb the prima facie case made by the patent of these inventions.

As to the claim that the devices or inventions secured by these letters patent had been in public use or on sale for more than two years prior to the application for these several letters patent, there has been no such sale shown as is contemplated by the statute and decisions thereunder.

Neither has it been shown that the completed devices or methods as used at the time these various patents were applied for were in public use two years prior thereto, respectively. The only use shown was the use by the Burden Iron Company. This was experimental, changes were being constantly made. The machines were also being adapted to the manufacture of the large number of varieties of standard shoes finally made by the company, amounting at the time of trial to over 100 varieties. Manifestly the necessary details of construction to make such machinery as would turn out all this variety of shoes would take a long time. As fast as the machinery was completed, the new varieties were constructed, and the testimony is that it was about 1897 when all of these were made. Elizabeth v. Pavement Co., 97 U. S. 134, 24 L. Ed. 1000.

I do not think there is any actual or implied license of the corporation to use these devices or methods covered by the three patents in question. This license more frequently arises where the patentee is an employé, is a personal one, and extends only to the machine or devices actually in use. It has been shown, I think, that James A. Burden was not in any sense an employé of the corporation, nor was he of the firm.

The principal contention of the plaintiff in this regard is that these machines, during experimental stages and afterward, were con-

structed, altered, and changed by the employés of the corporation or partnership of James A. Burden and I. Townsend Burden, which preceded it. But all of this work, or at least substantially all of it, was charged to James A. Burden, and paid by him. Of course, this does not include the machines in use at the time of the contract, as the company was to make them in any event, and did so.

It was held in Burr v. De La Vergne, 102 N. Y. 415, 419, 7 N. E. 366, 367, that:

"The proposition * * * that one partner acquires no right or interest, legal or equitable, in an invention made by his copartner during the existence of the partnership, by reason merely of the copartnership relation, although the invention relates to an improvement in machinery to facilitate the business carried on by the firm, and although the partner making the invention uses copartnership means in his experiments, and is also bound by the copartnership articles to devote his whole time and attention to the firm business, is a doctrine supported by authority and consonant with reason."

That disposes of the license, so far as the work done during the partnership was concerned. James A. Burden never acquiesced in the proposition that the corporation should use his invention without the payment of any royalty. On the contrary, he informed Arts, the general manager and superintendent, that he should require payment of royalties, and seems to have demanded such payment as soon as a basis for the adjustment of a fair royalty could be had. The company, by its superintendent and some of its trustees, was so informed. A stockholder would, in any event, require no such notice; but the evidence of the plaintiff does not disclose that he was led to suppose by any one that James A. Burden would permit the use of his inventions without compensation, so that all the material elements of a license seem to be lacking. In any event, such license would be only for the machines in use, nearly or quite all of which some time since were worn out and replaced, would not be exclusive, and would have conveyed to this company no such valuable rights as were conveyed by the contract sought to be vacated. This is an equitable action. So far as the equities are concerned, this plaintiff certainly ought not to be heard to complain that this agreement or contract was not entered into earlier. He was not injured but benefited. The company was getting the use of these devices for nothing, and it would have benefited the plaintiff, as a stockholder, if the experimental stage or structural stage of these machines to construct the different kind of shoes had been longer continued.

It has been shown, I think, that valuable rights belonging to James A. Burden were conveyed to the defendant the Burden Iron Company. No one has directly attacked these patents. No one has appeared, claiming to own them. No infringements have been shown. The company got all it bargained for, and, judging from results, it got a good bargain. I do not think this contract should be vacated or set aside, or any of the other relief asked for granted. A judgment may be entered accordingly.

Judgment accordingly.