(26 App. Div. 573.)

KOECHL v. LEIBINGER & OEHM BREWING CO. et al.

(Supreme Court, Appellate Division, Second Department. March 22, 1898.)

1. INSOLVENT CORPORATION—ASSIGNMENT.

In an action by a judgment creditor to set aside a general assignment made in May, 1897, by a corporation, as fraudulent, it appeared that checks given by it to the plaintiff in August, 1896, for a loan of $3,000, were not paid, and the president and secretary asked him not to deposit them, as they could not be paid; that in October, 1896, plaintiff loaned it $6,000, to tide it over a difficulty; and it was not denied that it was then stated to the president and one of the directors that the company was probably insolvent and had no chance of recovering itself. Six thousand dollars was also loaned to it by its secretary in 1896. *Held*, upon all the facts, that the evidence was practically conclusive that the corporation was insolvent for nearly a year prior to its general assignment.

2. SAME—PREFERENCES.

Section 48 of the "Stock Corporation Law" is effective in preventing a transfer of the property of a corporation which is insolvent, or whose insolvency is imminent, where the intent was to give a preference.

3. CREDITORS' BILL.

The provisions of Code Civ. Proc. c. 15, tit. 4, art. 1 (section 1871 et seq.), relating to judgment creditors' actions, do not preclude a judgment creditor, after the return of execution unsatisfied, from maintaining, under established principles of equity, an action not covered by the statute, to remove an impediment which prevents his judgment from becoming a lien, and to secure the payment thereof from the debtor's property by virtue of the lien created by the issuing of the execution and the institution of the action.

4. GENERAL ASSIGNMENT—FILING CLAIM.

The mere filing of a judgment creditor's claim with the assignee, under a general assignment by the debtor, is not such a recognition of the assignment as operates to nullify his action to set it aside.

5. SAME—FRAUD OF ASSIGNOR.

In order to set aside a general assignment for creditors as fraudulent, it is not necessary that the assignee should have participated in the fraudulent intent; it is sufficient if the intent of the assignor be fraudulent.

6. APPEAL—REFUSAL OF TEMPORARY INJUNCTION.

While courts upon appeal will not interfere with the exercise of a sound discretion by the court below, in refusing a temporary injunction, yet where the court can see that the facts warrant the injunction, and it is not clear that the action of the court below was based upon a full consideration of the facts, or where it has disposed of the application upon an erroneous view of the law, it will interfere and correct the error.

Appeal from special term.

Action by Victor Koechl against Leibinger & Oehm Brewing Company, a corporation, and others. From an order denying a motion to continue an injunction pending the action, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Frederick W. Hinrichs, for appellant.

Moses Weinman (Samuel Untermyer, on brief), for respondents.

HATCH, J. The defendant Leibinger & Oehm Brewing Company is a domestic corporation. Heretofore, and on the 19th day of May, 1897, it made and executed a general assignment, without preferences, for the benefit of its creditors, and the assignee therein named entered upon the discharge of his trust. Subsequent to his

qualifying as assignee, he presented a petition to the supreme court asking leave to sell at public auction the whole of the assigned property. An order authorizing him so to do was made by the court, and the property was sold for the sum of $55,000. The plaintiff is a judgment creditor of the defendant corporation, and he seeks by this action to have the said assignment set aside, as having been made in fraud of the rights of creditors, and for the purpose of hindering, delaying, and defrauding such creditors in the due enforcement and collection of their demands.

The action is at issue, and will soon be reached for trial. The injunction asked is for the purpose of restraining the defendant assignee from distributing the whole of the proceeds of the sale during the pendency of the action, and requires him to keep sufficient of the funds in his hands to satisfy the plaintiff's judgments in the event he succeeds in the action, and establishes his right to have his judgments paid and satisfied out of the property of the corporation. The amount which the plaintiff asks that the assignee retain for this purpose is the sum of $12,500. The plaintiff's judgments, independent of interest, amount to the sum of $9,471.53. It is the claim of the plaintiff that the corporation was, at the time of the execution of the assignment, insolvent, and that it had been so insolvent for a long time prior thereto, to the knowledge of its officers, directors, and attorneys; that, being so insolvent, its officers, directors, and attorneys conceived a scheme to make a fraudulent disposition of a portion of its property by distributing the same among its officers and attorneys, and after such distribution to make and execute an assignment of its remaining property for distribution among its creditors without preference; that, in pursuance of such fraudulent purpose, it delivered to its secretary bonds owned by it, and secured by mortgage upon its property, in the sum of $4,000, and to its attorneys a like number of the same series of bonds, of the same amount, secured by the same mortgage. Immediately upon the transfer and delivery of these bonds it executed and delivered the assignment. The plaintiff further claims that, if he establish such facts upon a trial, he becomes entitled to have the assignment set aside as fraudulent, and to have the amount of his judgments satisfied out of the property of the corporation, without regard to the rights of other creditors, except such as have prior specific liens.

We shall therefore consider, in the first instance, whether the facts upon which the plaintiff relies establish a prima facie case of fraud; and, if so, whether the legal result which flows therefrom entitles the plaintiff to the preliminary injunction and to the application of the property in satisfaction of his judgments, if he succeed upon a trial in establishing his claim as averred in his complaint. In August, 1896, the plaintiff loaned to the corporation, by an exchange of checks, $3,000. The plaintiff's checks were paid, but the corporation's checks remained unpaid, and plaintiff was requested by Moesmer, the secretary, and Leibinger, the president, not to deposit the checks, as they could not be paid. They were never paid, and now constitute the basis for two of the judgments averred in the complaint. In October, 1896, the plaintiff made a further loan of $6,000, secured by the

promissory notes of the corporation, payable upon demand. This loan was made to tide it over a difficulty, and at the time when it was made the plaintiff talked with the president and one of the directors about the affairs of the company, and stated to them that the company was probably insolvent, and had no chance of recovering itself. There is no denial of any of these statements or transactions by any of the defendants. Moesmer, the secretary, had also loaned the company during 1896, as he says, upwards of $6,000, and this money was due and unpaid some time prior to the assignment, and prior to the transfer of the bonds secured by the second mortgage. This evidence, when coupled with the fact that it was subsequently found necessary to make this assignment, and that the whole property sold for only $55,000, is practically conclusive of the fact that the corporation was insolvent for nearly a year, at least, prior to its general assignment. Brown v. Montgomery, 20 N. Y. 287; Rasin v. Ammidown, 15 Hun, 422; Toof v. Martin, 13 Wall. 40. Leibinger and Moesmer were, respectively, president, secretary, and directors in the corporation, and so remained at the time of the transfer of the bonds and the execution of the assignment. They must, therefore, have known of this condition of the corporation. At least, upon the papers now before us, it appears that they were cognizant of the transactions, and of the inability of the corporation to pay its commercial paper. In the absence of explanation by the defendants, the plaintiff became entitled to have the court find that the corporation was insolvent at the time when the transactions were had. The declaration of the defendant Moesmer that he had no idea that the company was insolvent when the bonds were delivered to him, in the absence of a denial upon his part of the facts above adverted to, is entitled to no consideration, as he is shown to have knowledge of the transactions, the dishonor of the corporation's paper, and its inability to pay its debts. The papers further disclose that the property of the corporation was incumbered by a first mortgage for $35,000 or $38,000. In the spring of 1897 the corporation concluded to place a second mortgage upon its property, and by resolution of its stockholders authorized the board of directors to sell the bonds, "to maintain and extend the business of the company by securing tax certificates for customers, and in such other manner as they may consider to the interest of the company." This mortgage secured bonds to the amount of $50,000. It is in dispute as to how many of these bonds had been issued prior to the execution of the assignment. The assignee has set out this mortgage in the schedule as constituting a lien for $29,000, and in his petition to the supreme court for leave to sell the property he stated that this mortgage was a lien for that amount.

It is the claim of the defendants that bonds to this amount were issued some time prior to the execution of the assignment, and by the plaintiff that $8,000 of them were issued on or about the day of the assignment, and he avers that such issuance was a part of the fraudulent scheme. It is undisputed that upon the books of the corporation appears an entry under date of May 20, 1897, the day after the assignment, showing that Moesmer surrendered on that date certain

past-due notes which he held of the corporation, and that he received therefor four of the second mortgage bonds. The date in the book had been changed from May 20th to May 1st, and the bookkeeper stated to the attorney for the plaintiff that the change was made by Moesmer's direction, after the assignment was made. There is no denial interposed by Moesmer of the date appearing in the book, nor of his direction to the bookkeeper to make the change. Although he makes an affidavit, it contains no denial, except that he did not receive the bonds on May 20th, but several weeks prior thereto, the date of which he does not give. No denial is interposed by the bookkeeper, or by any other person, as to the statement made by him. In addition to this, Alfred E. Hinrichs testifies that Moesmer informed him in an interview relating to the mortgage had on May 14th, five days before the assignment, that this mortgage had on been executed about three weeks before, and that only $20,000 in bonds had been issued thereunder. Moesmer makes no denial of this statement.

Plaintiff brought his action upon the claims upon which he recovered judgments, and the summons was served upon Moesmer, May 14, 1897. On the 18th, Moesmer, through M. Hallheimer, his attorney, served verified answers in four of the actions, containing a general denial, and averring lack of consideration for the debt. At this time, as we have seen, Moesmer knew of the checks, and had long before requested the plaintiff to hold them, as they could not be paid if deposited. He had but a few days before written the plaintiff's attorney, admitting the liability of the defendant corporation, and asking for further time. The plaintiff thereupon moved the causes onto the short-cause calendar, and they were set for trial on the 7th day of June, 1897. On June 1st Moesmer withdrew his answers, and judgments were entered by default. There is no denial of these facts. We feel justified in observing that the reckless disregard of the obligation of an oath, evidenced by the verification of these answers, so far discredits Moesmer as to call for the rejection of all the statements contained in his affidavit as being unworthy of belief, except so far as such statements may be corroborated by unimpeached testimony.

The papers in respect of the transaction with Untermyer disclose the following: The minute book of the corporation shows that the firm of which Untermyer is a member was under a general retainer of the corporation of $500 per annum. Under date of May 19, 1897, the following resolution was passed by the board of directors, consisting of Leibinger, Moesmer, and one Schmolz:

"Resolved, that the president is authorized to pay the charges of counsel in connection with the assignment, and to that end to pledge, hypothecate, or dispose of such securities belonging to the company as may be necessary for that purpose."

In connection with this resolution appear in the affidavit certain declarations of the president as to what securities were delivered in pursuance of this resolution. They are declarations made after the assignment, and in impeachment of it, and may not, therefore, be considered. We do, however, so far consider this matter as to be impressed with the view that Leibinger may be called as a witness

upon the trial to testify as to the principal fact, and his evidence in this manner become available. It does not appear what securities were delivered under this resolution, but it does appear that on June 3, 1897, Untermyer stated to plaintiff's attorney that there were but $20,000 worth of second mortgage bonds outstanding, and that they were held by a Buffalo creditor. This statement Untermyer does not deny. Untermyer states that he had special charge of the business of the corporation, and had had for many months, and negotiated in the matter of procuring additional capital, for which his firm was to receive $3,000, and he took the bonds in payment, at 75 cents on the dollar.

It is quite evident that this corporation was for some time in so precarious a state that it would seem as if the person who negotiated in respect of its financial matters, and had charge in that direction, must have obtained some knowledge leading him, at least, to think that the business was not prosperous, and the corporation of doubtful solvency. Untermyer appears, from his own affidavit, to have been in a position to know, and the court could find that the officers and attorneys knew, that the corporation was in embarrassed circumstances for a considerable time before the assignment was made. In other words, that they then knew the facts which existed.

We come, therefore, to the law applicable to the case, as we view the facts. Section 48 of the "Stock Corporation Law" renders invalid any conveyance, assignment, or transfer of the property of a corporation by any officer, director, or stockholder with intent to give a preference to any particular creditor over other creditors of the corporation. It has been held that this statute is effective in preventing a transfer where the intent was to give a preference. Milbank v. De Riesthal, 82 Hun, 537, 31 N. Y. Supp. 522. It is quite evident that, if the plaintiff can establish the averments of his complaint, the court would be authorized to find upon a trial that the intent to prefer existed at the time the transfers of the bonds were made.

It is claimed by the defendants that this action cannot be maintained, and a preference secured over other creditors. This view proceeds upon the theory that, by the provision of the Code of Civil Procedure (article 1, tit. 4, c. 15), no such action is authorized. This may be conceded. The answer is, however, that this is not an action under the Code. The claim here presented upon the part of the defendants is completely answered by the decision in Easton Nat. Bank v. Buffalo Chemical Works, 48 Hun, 557, 561, 1 N. Y. Supp. 250. That action, like this, was to remove an impediment which prevented plaintiff's judgments from becoming liens; and it was observed by Mr. Justice Daniels, after showing that the provisions of the Code upon which the defendants rely had no application, that the action "depends wholly upon the established rules of courts of equity." The plaintiff in that action was defeated for the reason that he had not issued an execution upon his judgment, and returned unsatisfied, which it was held was a condition precedent for the maintenance of the action. Here the executions were issued,

and returned unsatisfied. There is nothing said in Home Bank v. J. B. Brewster & Co., 15 App. Div. 338, 44 N. Y. Supp. 54, which conflicts with this view. Judge Williams was then speaking of the remedies under the Code. He expressly says: "The general provisions of the Code, with reference to judgment creditors' actions, do not apply to such an action." This said what Judge Daniels had before said, using different words and with more amplification. This case not only does not support the contention of the defendants, but it is a distinct authority against them, not only as to the question of practice, but in the measure of relief to which plaintiff will become entitled if he succeed in his action; and that relief will be the payment of his judgments from the property of the corporation by virtue of the liens created by the issuing of the execution and the institution of his action. In this respect the case is in harmony with rules long settled and uniformly applied. Hammond v. Machine Co., 20 Barb. 378; Pom. Eq. Jur. § 1415; Edmeston v. Lyde, 1 Paige, 636; Bank v. Shuler, 153 N. Y. 163–171, 47 N. E. 262. It is not necessary that the assignee should participate in the fraudulent intent; it is sufficient if the intent of the assignors be fraudulent. Loos v. Wilkinson, 110 N. Y. 195, 18 N. E. 99. The filing of the claim by plaintiff with the assignee was not such a recognition of the assignment as operated to nullify his action. He had the right to act upon the defensive, and protect himself at every point, without subjecting himself to the penalty of having his action dismissed, unless he ratified the assignment by some unequivocal act. The mere attempt to protect himself as an alternative resort is not a proceeding under the assignment in such a sense as conclusively recognizes its validity. It is true that the assignment is valid upon its face, but this is no answer to plaintiff's claim, if the prior disposition of the property was fraudulent; otherwise it would be an easy matter to dispose of practically all of the property of a corporation by fraudulent preference, and then protect such acts by an assignment valid upon its face. The law tolerates no instrument which makes a shelter for fraud. It is quite true that courts upon appeal will not interfere with the exercise of a sound discretion by the court below, either in refusing or in granting an injunction; but where the court can see that the facts warrant the injunction, and it is not clear that the action of the court below was based upon a full consideration of the facts, or where it has disposed of the application upon an erroneous view of the law, the court will interfere and correct the error. In the present case either view may have obtained in the court below; and as the assignee may distribute the whole of the proceeds, and leave nothing to answer plaintiff's judgment, if he succeed, we think a proper case was presented for the continuance of the injunction. We are also inclined to this view for the reason that only sufficient of the funds in the hands of the assignee is retained to meet the contingency of the suit, which can be speedily tried, and little hardship will be worked upon any one.

The order should be reversed, and the motion to continue the injunction should be granted. All concur.