AMERICAN SURETY COMPANY OF NEW YORK, Respondent,
*v.* WALLACE L. CONNER, Defendant, and BESSIE F. B.
CONNER, Appellant.

(Argued April 30, 1929; decided May 28, 1929.)

*Louis P. Eisner, Eugene J. Raphael* and *Ralph H. Raphael* for appellant. Defendant-appellant is a *bona fide* owner and holder of the property in question for value. (*Foley* v. *Ronalds*, 107 Misc. Rep. 125; 191 App. Div. 882; *De Hierapolis* v. *Reilly*, 44 App. Div. 22; 168 N. Y. 585; *Smith* v. *Allen*, 87 Mass. [5 Allen] 454; *Ogden* v. *McHugh*, 167 Mass. 276; *Prewit* v. *Wilson*, 103 U. S. 22; *Magniac* v. *Thompson*, 7 Pet. 348; *Matter of Moncrief*, 235 N. Y. 390; *Matter of Wadsworth*, 100 Misc. Rep. 439; *Prignon* v. *Daussat*, 4 Wash. 199.) A creditors' action to set aside a fraudulent conveyance can only be maintained after the recovery of judgment and the return of execution thereon unsatisfied. (*Adsit* v. *Butler*, 87 N. Y. 585; *Adee* v. *Bigler*, 81 N. Y. 349; *Southard* v. *Benner*, 72 N. Y. 424; *Scott* v. *Neeley*, 140 U. S. 106; *Abbott* v. *Nat. Gravure*

*Circuit, Inc.*, 200 App. Div. 47; *Newton* v. *Otselic Valley National Bank*, 224 App. Div. 527; *Orinoco Realty Co.* v. *Bandler*, 233 N. Y. 24; *Zimmerman* v. *Merriman*, 130 Misc. Rep. 163.)

*Gerald Morrell, George L. Naught* and *James E. Finegan* for respondent. The conveyance of the real property, and the transfer of the jewelry described in the complaint in this action to the defendant-appellant, was voluntary and without consideration. (*Foley* v. *Ronalds*, 107 Misc. Rep. 125; 191 App. Div. 882; *DeHierapolis* v. *Reilly*, 44 App. Div. 22; 168 N. Y. 585; *Cajole* v. *Ferris*, 23 N. Y. 90; *Ostro* v. *Ostro*, 169 App. Div. 790; *Perry* v. *Perry*, 2 Paige Ch. 501; *Matter of Moncrief*, 235 N. Y. 390; *Price* v. *Price*, 124 N. Y. 589; *Jones* v. *Brismade*, 183 N. Y. 258; *Rubin* v. *Joseph*, 215 App. Div. 91.) The conveyance of the real property and the transfer of the jewelry described in the complaint in this action, to the defendant Barker, was fraudulent as a matter of law as to this plaintiff. (Debtor and Creditor Law, §§ 270, 273.) A claim may be adjudicated and a conveyance set aside in one action, by a creditor, under article 10 of the Debtor and Creditor Law. (*Marcus* v. *Cain*, 18 Fed. Rep. [2d] 722; *Lipskey* v. *Voloshen*, 140 Atl. Rep. 402; *Morse* v. *Roach*, 229 Mich. 538; *Fisowitz* v. *Cordoro Construction Co.*, 140 Atl. Rep. 573; *Conway* v. *Raphel*, 141 Atl. Rep. 804; *Wilson* v. *McCarroll*, 80 N. H. 580; *Lightfoot* v. *Davis*, 198 N. Y. 261.)

CARDOZO, Ch. J. Conner, the manager of a savings bank, stole its money for many years till at last the total of his thefts was about $100,000. In 1923 he proposed marriage to Bessie Barker, who was then seeking a divorce from her husband. She promised to marry him on obtaining her divorce if he would make provision for her future. This he undertook to do, binding himself to convey to her in consideration of the marriage his real estate at Amityville, Long Island, as well as a quantity

of jewelry. While she was still at Reno, Nevada, suing for a divorce, he made a deed of the land in her name as grantee, and placed it on record. The judgment of divorce was granted July 2, 1924, and six days later the new marriage was celebrated. The night of the marriage, Conner handed to his wife the jewelry and the deed, and told her they were hers.

Three months later the crash came. Conner was arrested for forgery and embezzlement, and was sent to prison for a term of years. His wife brought suit against him to annul the marriage on the ground of fraud, and judgment of annulment was thereafter rendered. The plaintiff, a surety on Conner's bond, made good the losses of the bank, and was substituted by assignment to its rights and remedies. This action followed in October, 1926. Its purpose was to subject the land and jewelry to the payment of the husband's debt. The trial court and the Appellate Division were at one in holding that neither land nor jewelry had been purchased with the stolen money. In the absence of such proof, the case does not involve any question of a trust or an equitable lien attaching to the fruits of theft (*Lightfoot v. Davis*, 198 N. Y. 261). If the plaintiff is to prevail, it must be either through succession to Conner on the theory that there was a failure of consideration when the marriage was annulled, or by virtue of a right as creditor on the theory that the retention of the property involves the commission of a fraud. The Special Term held that there was neither failure of consideration nor fraud, and so dismissed the complaint. The Appellate Division held that the retention of the property, even if permissible against Conner, was without consideration, and so in fraud of creditors, when the marriage was at an end. The decree directing restitution is now before us for review.

A question of procedure confronts us at the threshhold. Neither the bank nor its assignee, the plaintiff, had

recovered judgment against Conner when this action was begun. In the absence of enabling statute, it has been the practice of equity to refuse relief against a conveyance in fraud of creditors till the suitor has recovered a judgment at law establishing the debt (*Briggs* v. *Austin*, 129 N. Y. 208; *Southard* v. *Benner*, 72 N. Y. 424; *Case* v. *Beauregard*, 101 U. S. 688; *National Tube Works* v. *Ballou*, 146 U. S. 517; *Pusey & Jones Co.* v. *Hanssen*, 261 U. S. 491). Such exceptions to this practice as have been admitted had their origin in rare emergencies where there was need of instant action (*People ex rel. Cauffman* v. *Van Buren*, 136 N. Y. 252; *Whitney* v. *Davis*, 148 N. Y. 256), or in the presence of some impediment whereby judgment had been made impossible (*National Tradesmen's Bank* v. *Wetmore*, 124 N. Y. 241; *Trotter* v. *Lisman*, 209 N. Y. 174, 181). In addition to a judgment there has been need of execution. If the subject of the suit was tangible property — land or goods and chattels — the plaintiff might remove the fraudulent obstruction upon showing that an execution had been issued, whether already returned or still outstanding with the sheriff (*Geery* v. *Geery*, 63 N. Y. 252; *Fox* v. *Moyer*, 54 N. Y. 125, 129; *Lichtenberg* v. *Herdtfelder*, 33 Hun, 57; 103 N. Y. 302; *Macauley* v. *Smith*, 132 N. Y. 524, 532; *Koechl* v. *Leibinger & Oehm Brewing Co.*, 26 App. Div. 573). If the subject was a chose in action or other equitable asset, equity would not act except upon a showing that execution had been returned unsatisfied (*Braem* v. *Merchants' National Bank*, 127 N. Y. 508; *First National Bank* v. *Shuler*, 153 N. Y. 163). On the other hand, there were times when a creditor was free, if he pleased, to renounce the aid of equity altogether. If the property fraudulently transferred was land or goods and chattels, things subject to levy under execution as distinguished from equitable assets, he might treat the conveyance as a nullity, and levy his attachment or execution in spite of it (*Smith* v. *Reid*, 134 N. Y. 568; *Hess* v. *Hess*, 117 N. Y. 306, 308; *Anthony* v. *Wood*, 96 N. Y. 180; *Thur-*

*ber* v. *Blanck*, 50 N. Y. 80). In such circumstances, he might find it necessary to indemnify the sheriff, and, when the seizure was erroneous, assumed the risk of error. Amendments to the Code (Code Civil Proc. § 655), carried forward into the present act (Civil Practice Act, § 922), made breaches here and there in these doctrines of the chancery. In the main, they stood unchallenged when the Debtor and Creditor Law (Cons. Laws, ch. 12) was amended in 1925 by the adoption of article 10 as to fraudulent conveyances.

How far the adoption of that article has changed the preliminary conditions governing the remedy in equity, is the question now before us. Article 10 of the Debtor and Creditor Law is substantially the same as the Uniform Fraudulent Conveyance Act, prepared by the Commissioners for the Promotion of Uniformity of Legislation in the United States, and is to " be so interpreted and construed as to effectuate its general purpose to make uniform the laws of those states which enact it " (Debtor & Creditor Law, § 281). Section 270 gives the definition of a creditor. " ' Creditor ' is a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." Section 278 states the remedies available to a creditor whose claim has matured. " Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser. a. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or, b. Disregard the conveyance and attach or levy execution upon the property conveyed." Section 279 states the remedies available to a creditor whose claim has not matured. " Where a conveyance made or obligation incurred is fraudulent as to a creditor whose claim has not matured

he may proceed in a court of competent jurisdiction against any person against whom he could have proceeded had his claim matured, and the court may, a. Restrain the defendant from disposing of his property. b. Appoint a receiver to take charge of the property, c. Set aside the conveyance or annul the obligation, or d. Make any order which the circumstances of the case may require."

We think the effect of these provisions is to abrogate the ancient rule whereby a judgment and a lien were essential preliminaries to equitable relief against a fraudulent conveyance. The Uniform Act has been so read in other States (*Gross* v. *Penn. Mtg. Co.*, 101 N. J. Eq. 51; *United Stores Realty Corp.* v. *Asea*, [N. J.] 142 Atl. Rep. 38; *Morse* v. *Roach*, 229 Mich. 538; *Lipskey* v. *Voloshen*, 155 Md. 139). Decisions cited to the contrary were made without reference to the statute and without professing to construe it (see *e. g.*, *Lipman* v. *Manger*, 185 Wis. 63). The reading seems to be inevitable, aside from any precedent. The act is explicit that a creditor may now maintain a suit in equity to annul a fraudulent conveyance, though his debt has not matured. It is not believable that a creditor with a debt already due was to be placed in a less favorable position, or beset by greater obstacles. For the one as for the other, the path is to be cleared of harassing impediments to the swift pursuit of justice. The act in its definition of a creditor seeks a rule of uniformity, and in so doing levels distinctions that at times had been the refuge of the dilatory debtor. It did not level them at the beginning to restore them later on. Certainty would, indeed, have been promoted if it had said in so many words that judgment and a lien should no longer be essential. We think it said as much, however, by fair and natural implication. The creditor may reject the aid of equity, and levy attachment or execution at law (§ 278, subd. b), as he might before the statute. He may seek the

aid of equity, and without attachment or execution, may establish his debt, whether matured or unmatured, and challenge the conveyance in the compass of a single suit. This he might do, even before the statute, if the debtor waived compliance with the preliminary conditions (*Hollins* v. *Brierfield Coal & Iron Co.*, 150 U. S. 371; *Matter of Metropolitan R. R. Receivership*, 208 U. S. 90, 109, 110). What once he might do of favor, he now may do of right. Questions may arise hereafter as to the proper mode of trial where the debt is in dispute (cf. *Broiestedt* v. *South Side R. R. Co.*, 55 N. Y. 220; *Di Menna* v. *Cooper & Evans Co.*, 220 N. Y. 391, 395; *Syracuse* v. *Hogan*, 234 N. Y. 457, 464; *Scott* v. *Neely*, 140 U. S. 106) or as to the proper form of judgment in the event that there are successive suits or several and competing creditors (cf. *Day* v. *Washburn*, 24 How. [U. S.] 352). The creditor who acts under section 278 is to set aside the conveyance " to the extent necessary to satisfy his claim," but when he acts under section 279, the restriction, if it exists, is implied and not expressed. The solution of these difficulties and others of like order may be postponed till they develop. Enough for present purposes that the plaintiff has a standing to challenge the conveyance.

The remedy being appropriate, we are brought to a consideration of the merits.

Analysis will be aided if we ask at the beginning whether the husband could have relief if he were suing to reclaim what he had parted with, and from this pass to the inquiry what greater right, if any, is vested in a creditor.

We think the husband, if he were suing, would be dismissed without relief. The transfer was made in consideration of a promise of marriage. The marriage, it is true, has been annulled, but for the fraud of the husband, not for the misconduct of the wife. The law did not condition the annulment upon a return by the wife of benefits received. What it ended was a contract, but a

contract resulting in something more important, a status or relation, which was ended at the same time. The grounds for terminating the status or relation have been fixed by the law for the welfare of society. When once they exist, they do not cease to be effective because tender or an accounting might be exacted as a condition of rescission in respect of contracts generally. The marriage being effectively annulled without return of benefits, the question remains as to the effect of the annulment upon another and separate contract, under which property was conveyed for something given in return. The husband suing after annulment to recover what he had parted with on the ground of a failure of consideration, partial or complete, would be subject to the general rule that recovery for failure of consideration is governed by equitable principles (3 Williston, Contracts, §§ 1457, 1530). The decree of annulment destroyed the marriage from the beginning as a source of rights and duties (*Matter of Moncrief*, 235 N. Y. 390, 397), but it could not obliterate the past and make events unreal. For two years and more this marriage had subsisted; for part of those years, there had been life together as man and wife. Gains there had been and losses beyond the process of appraisal. The man had enjoyed the society of a woman, with the opportunity of offspring, who, if born, would have been legitimate (Civ. Prac. Act, § 1135, subd. 4). The woman had given herself to the society of a man, to be associated for the rest of her life with him and with his name in the thought of friends and relatives. If the woman had been the wrongdoer rather than the victim, and a man, innocent of fault, were suing after annulment to reclaim what he had lost, the recovery would not fail because he might be left in possession of gains not subject to appraisal, the enjoyment of her society while the marriage bond subsisted (*Rubin* v. *Joseph*, 215 App. Div. 91; *P.* v. *P.*, [1916] 2 Irish Rep. 400, 414). Let the tables be turned,

and still the wrongdoer must suffer whether plaintiff or defendant. One who does not know what to restore to another, may not insist upon restitution to himself if it is his own guilt and not the other's that has engendered the confusion (*Ring* v. *Ring*, 127 App. Div. 411, 412; 199 N. Y. 574). The wrongdoer will be left in the toils of his duplicity (*Hammond* v. *Pennock*, 61 N. Y. 145; *Butler* v. *Prentiss*, 158 N. Y. 49, 63, 64; *Heckscher* v. *Edenborn*, 203 N. Y. 210, 228). At least this will be so when appraisal must be lacking in approximate precision, if possible at all. The hardship of forcing the defendant to return what she had received, without allowance or abatement, would be even plainer if she had been a maiden when married to the plaintiff, or if children had been born, so that for the rest of her life she would be left with the responsibilities of motherhood. The difference, however, is one of degree, and nothing more. If annulment of the marriage *ab initio* involves a failure of consideration so complete as to give to the wrongdoer a right to restitution "*in integrum*," the same result must follow whether the marriage has been brief or long, with children or without. The gain and the loss are incommensurable in the one case as in the other.

The precedents, so far as there are any, lend aid to this conclusion. *Ogden* v. *McHugh* (167 Mass. 276) is a case where a man conveyed property to his wife in fulfillment of an ante-nuptial contract. After his death it was found that the woman's first husband, who had been thought to be dead, was alive, so that the second marriage was a nullity. The heirs brought a suit to set aside the conveyance. The holding was that the wife might retain what she received. It was no longer possible, the court said, to place her in the condition in which she would have been but for the acts that she had done in performance of the contract. It would be unjust in such circumstances to take back what had been given. The situation differs in features more or less significant from

the one at hand, yet the difference is not so great as to involve a variance of principle. Other cases may be cited, not so similar in their facts, and yet pointing in the same direction (*Ring* v. *Ring, supra; De Hierapolis* v. *Reilly,* 44 App. Div. 22; 168 N. Y. 585; *Dunbar* v. *Dunbar,* [1909] 2 Ch. 639; cf. *Galusha* v. *Galusha,* 116 N. Y. 635, 644, 645, where there was divorce, not annulment). After all, the underlying principle, running through the cases, is this and nothing more, that the action for money had and received upon a failure of consideration, partial or complete, is to be ruled by broad considerations of equity and justice, and that the plaintiff may not prevail if he fails to satisfy the court that what the defendant has received should in conscience be returned (*Schank* v. *Schuchman,* 212 N. Y. 352, 358; *Kingston Bank* v. *Eltinge,* 66 N. Y. 625, 627; Williston, *supra; Whincup* v. *Hughes,* L. R. 6 C. P. 78; Woodward, Quasi Contracts, §§ 23, 130).

The question remains whether the plaintiff as a creditor has any greater right to reclaim the land and jewels than would belong to the husband or the husband's assignee. There is no pretense that the transfer was a fraud upon creditors when it was made in 1924. The rule was settled at common law that marriage or the promise of marriage was a valuable consideration (*De Hierapolis* v. *Reilly, supra; Smith* v. *Allen,* 5 Allen, 454). We do not need to inquire whether the Debtor and Creditor Law (§ 272) has established another test of value, for it did not take effect till April, 1925, and could not invalidate a transfer previously made. If the transfer of the property was not fraudulent when made, it did not become fraudulent by retroaction when at some time in 1926 the marriage was annulled. The wife was not guilty of a fraud upon creditors in refusing to return the benefits received unless proved to be in excess of benefits conferred. The title was then hers, and if divested at all, it could only be by the power of an equity greater than

her own. A creditor may insist upon the satisfaction of his debt out of any property of the debtor fraudulently conveyed. He may not have satisfaction out of property innocently conveyed though there has been failure of consideration afterwards, unless the failure is such that there is a call for restitution in equity and honor.

The judgment of the Appellate Division should be reversed, and that of the Special Term affirmed, with costs in the Appellate Division and in this court.

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment accordingly.