OPINION OF THE COURT
Eugene L. Nicandri, J.
This is a special proceeding authorized by CPLR 5239 to determine adverse claims to personal property, in the context of a property execution to collect a money judgment. County Court has subject matter jurisdiction of the proceeding under CPLR 5221 (a) (4), even though the judgment in question was entered in Supreme Court. The Sheriff has attempted to levy execution on a collection of handguns which were formerly the property of Robert Shelly (hereafter called Robert), and which are now held by William Shelly (hereafter called William), to apply their value toward the $602,443.29 judgment. Petitioners argue that the guns are legitimately William’s property by gift from Robert. Respondent argues that the transfer to William was a voidable fraudulent conveyance, on a number of grounds, under Debtor and Creditor Law §§ 270-281, also known as the Uniform Fraudulent Conveyance Act (UFCA).
*202 Through their pleadings the parties agree to the following pertinent facts. Beginning in 1987, Robert began a series of acts of abuse of the respondent, who was then 10 years old, and this conduct continued until 1990. In November or December 1993 Robert was arrested on felony charges concerning these acts.
On December 1, 1993 Robert turned over to the State Police a collection of handguns and long guns, and received a receipt for them. On December 7, 1993 these guns were turned over, with Robert’s knowledge and consent, to his brother William. Notwithstanding his gift of the guns, Robert remained, and apparently remains, a member of one or more hunting clubs, although the significance of that fact, if any, has not been established.
In the spring of 1994 Robert entered a guilty plea to the felony charges. On June 17, 1994 respondent commenced a civil action for money damages relating to the criminal acts.
In a May 17, 1995 sworn statement of net worth presumably filed in connection with another proceeding involving Robert, the stated value of his assets at that time, without regard to his then-current liabilities or to property which he claimed to be exempt, was less than the amount of the civil judgment entered on January 21, 1997 after trial. After offsetting the $2,443.29 attributable to costs and disbursements in the judgment, 50% of the recovery was for compensatory and 50% for punitive damages. No appeal has been taken from the judgment or award, and no stay has been sought or issued.
In January 1997 Robert asserted, in response to an information subpoena, that his 1993 transfer of the guns was a gift to William. Robert valued the gift at not more than $2,500 in December 1993, and stated that his gift was motivated by legal advice to the effect that his pistol license would be revoked because of then-pending felony charges, and that any felony conviction would bar his right to possess long guns as well.
A restraining notice was served on William in March 1997, to bar any further transfer of the guns, thereby setting up the conflicting claims now raised in this proceeding.
Respondent obtained a 1997 blind estimate from a gun dealer who has not seen the guns in question. That dealer asserts a present value of the collection at $5,750, more than twice the 1993 value asserted by Robert. However, the parties do agree that Robert would not have been made insolvent in 1993 solely by reason of the transfer of the guns, even if respondent’s higher value were used.
*203 The parties disagree on the answers to five questions which must be resolved through application of the Uniform Fraudulent Conveyance Act:
1. Was respondent a creditor of Robert when he gave the guns to William; and
2. When Robert gave the guns to William, was respondent’s cause of action for the abuse torts a debt, within the meaning of the act; and
3. Was Robert insolvent when he gave the guns to William; and
4. Did Robert believe or intend that he would incur debts beyond his ability to pay when he gave the guns to William; and
5. Did Robert have an actual intent to defraud present or future creditors when he gave the guns to William? These questions are posed in terms of the language of Debtor and. Creditor Law §§ 273, 275 and 276 respectively.
The following terms have been statutorily defined, and are relevant to these issues:
"creditor” — "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent” (Debtor and Creditor Law § 270);
"debt” — "any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent” (Debt- or and Creditor Law § 270);
"insolvency” — "A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured” (Debtor and Creditor Law § 271 [1]);
"conveyance by insolvent” — "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration” (Debtor and Creditor Law § 273);
"conveyance by person about to incur debts” — "Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors” (Debtor and Creditor Law § 275);
"conveyance made with intent to defraud” — "Every conveyance made and every obligation incurred with actual intent, as *204 distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors” (Debtor and Creditor Law § 276).
Perusal of Debtor and Creditor Law §§ 270-281 discloses several groups of provisions: section 270 contains definitions; sections 273-275 define different aspects of constructive fraud, or fraud presumed in law; section 276 defines actual fraud; section 278 defines the remedies for a claimant whose claim had matured at date of transfer; section 279 provides the remedies for a claimant whose claim was unmatured; section 280 incorporates the law relating to bankruptcy, among other topics, to assist in resolving cases not directly addressed by the Uniform Act; and section 281 expresses a legislative intent that the UFCA be so construed as to make uniform the laws of the States which enact it.
Claim, Creditor and Debt
Although the Debtor and Creditor Law uses the terms "matured”, "liquidated” and "contingent” (and their opposites), they are not defined in the statute.
A claim is said to have matured — a term used in the substantively identical definitions of creditor and debt under the Debtor and Creditor Law — when it "has become absolutely due without contingency, although not necessarily liquidated nor presently payable.” (Black’s Law Dictionary 1130 [4th ed] [definition of "mature; matured”, citing In re Hollander Co., 301 Mass 278, 16 NE2d 35, 36].) Maturity of a debt, then, has to do with whether it is presently due.
A claim is said to be liquidated — another term used in the same definitions — when it is "ascertained; fixed; settled; made clear or manifest.” (Black’s Law Dictionary, op. cit., at 1079 [definition of "liquidated”, citing Sinclair Ref. Co. v Unadilla Motor & Supply Co., 126 Misc 292 (Sup Ct, Otsego County 1926); Canda v Canda, 92 NJ Eq 423, 112 A 727, 728].)
A contingent claim is one which "has not accrued and which is dependent on some future event that may never happen.” (Black’s Law Dictionary, op. cit, at 392 [definition of "contingent claim”, citing Matter of People (Lexington Sur. & Indem. Co.), 272 NY 210 (1936)].)
In December 1993 when Robert gave the guns to William he had completed what were later determined to be criminal acts; he was charged with pending felonies as to which at that point *205 in time he was presumed innocent; and although respondent’s right to sue had accrued, the civil suit had not yet been commenced. Respondent’s claim at that point in time may therefore be characterized, for purposes of the Debtor and Creditor Law, as unmatured, because a court had not found it to be due; and unliquidated, because it was neither settled nor fixed as to amount.
New York adopted the Uniform Fraudulent Conveyance Act without change from the text of the uniform model statute. (Marine Midland Bank v Murkoff, 120 AD2d 122 [2d Dept 1986], appeal dismissed 69 NY2d 875.) It is interesting to note that the UFCA does not define the term "claim”, although the more recent Uniform Fraudulent Transfer Act (hereafter abbreviated as UFTA) — adopted by more jurisdictions, but not by New York — does so. In the latter statute a claim is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.” (UFTA § 1 [3].) Clearly there is substantial overlap between the two and any distinctions may be without any practical difference. It is noted, however, that "claim” as defined in the UFTA is dependent upon a right to payment. Clearly under the UFCA a debt is dependent on there being a legal liability. The real question in this proceeding is whether a mere cause of action or right of action based upon a completed intentional tort constitutes a debt and makes the victim of that tort a creditor within the meaning of the UFCA. Historical Notes and Comments to the UFTA state as follows:
"(3) The definition of 'claim’ is derived from § 101(4) of the Bankruptcy Code. Since the purpose of this Act is primarily to protect unsecured creditors against transfers and obligations injurious to their rights, the words 'claim’ and 'debt’ as used in the Act generally have reference to an unsecured claim and debt. As the context may indicate, however, usage of the terms is not so restricted. See, e.g. §§ l(l)(i)(B) and 1(8).
"(4) The definition of 'creditor’ in combination with the definition of 'claim’ has substantially the same effect as the definition of 'creditor’ under § 1 of the Uniform Fraudulent Conveyance Act. As under that Act, the holder of an unliquidated tort claim or a contingent claim may be a creditor protected by this Act.” (UFTA § 1, Historical Notes and Comments [3], [4].)
Pennsylvania, like New York, adopted the UFCA, and one reported case seems to address substantially the issue presented here as to whether Doe was a creditor of Shelly by rea *206 son of her as-yet unsued, unlitigated claim against Shelly, at the time when the guns were transferred. In City of Philadelphia v Stepan Chem. Co. (713 F Supp 1491, 1493, n 3 [ED Pa 1989]) the court held that: "The City has referred me to no cases — and my research has uncovered none — in which one party’s allegations transformed it into a creditor of the one against whom the allegations were made. Although the Uniform Fraudulent Conveyance Act does not define 'claim’ as it is used to describe 'creditor,’ I find that the legislature did not intend for mere allegations to constitute a claim, absent some legal foundation, such as an underlying debt, a contract, or a lawsuit properly filed and served.” In that case, the City’s claim for reimbursement for cost incurred in cleaning up illegally dumped toxic waste was not filed until at least two years after the transfer which the City was trying to have voided. The only notice of the potential claim was by way of letters from the City to the corporation and its sole shareholder, letters which went unanswered.[1]
In a much earlier case arising in New York, Marcus v Kane (18 F2d 722 [2d Cir 1927]), the court found that a tort claim which resulted in judgment after the questioned transfer was entitled to protection under the precursor of the UFCA. The Uniform Act had been adopted, but was not yet effective in New York. The court found that the result would have been the same either way. However, the court also focused on the lack of any apparent reason to distinguish between contract and tort cases, in terms of affording protection to creditors, and does not state whether the transfer occurred before or after civil litigation was filed on the claim. The court also noted as significant the fact that, unlike in the case at bar, the transfer involved substantially all of the debtor’s assets, and was clearly for the purpose of delaying or hindering creditors. The court in Marcus also cites New York State court cases for the proposition that a plaintiff who suffered personal injuries prior to the transfer and who subsequently obtained a judgment might successfully set aside a transfer made without a valuable consideration as a hindrance and delay and fraud against the creditor. (Light v Fischer, 162 App Div 483 [1st Dept 1914]; Meyer v Mayo, 196 App Div 78 [2d Dept 1921].) A New Jersey court went even further, holding, also under the UFCA, that a judgment relates back in time, for purposes of *207 analysis under the UFCA, to the time when the original cause of action accrued. (Washington Natl. Bank v Beatty, 77 NJ Eq 252, 76 A 442 [1910].)
Perhaps the most contingent, unmatured and unliquidated intentional tort claim found by the courts to entitle the claimant to protection under the UFCA is illustrated by Satson v Harris (435 SW2d 667 [Mo 1968]; Annotation, 38 ALR3d 597). There the tortfeasor made and delivered deeds to substantially all of his real property to two people to whom the tortfeasor felt closely related although there was no blood kinship. Approximately 48 hours later the defendant shot and killed first his girlfriend and then himself. In the ensuing wrongful death action on behalf of the girlfriend’s heirs, the court found the conveyance of the land was undertaken with actual intent to defraud her heirs, and the transfer was therefore void. The court explicitly found that the UFCA intended to protect creditors whose claims come into existence after the challenged conveyance, where actual fraud is established. The court found the fraud established under the "badges of fraud” rubric, which presumes fraud when the transaction is marked by certain indicia commonly associated with actual fraud, including such factors as close relationship of transferor and transferee; secrecy and haste of the sale or transfer; inadequacy of consideration; transferor’s knowledge of the creditor’s claim and his own inability to pay it; and conveyance of substantially all of the assets of the transferor.[2] Analytically interesting as that annotation may be, it collects no New York cases, and is at least partially distinguishable from the present factual situation in which the claim arose before the challenged conveyance.
Moreover, where actual fraud is alleged, the New York courts have held that by adopting the UFCA New York has abandoned the long-standing presumption of fraud originating in judicial construction of fraudulent conveyance statutes as far back as the Statute of Elizabeth (13 Eliz, ch 5) adopted in 1571. (Marine Midland Bank v Murkoff, 120 AD2d 122 [2d Dept 1986], appeal dismissed 69 NY2d 875, supra.) The burden *208 of proving actual fraud is upon the claimant seeking to void a conveyance, and the standard is by clear and convincing evidence. (Supra, at 126, citing Brody v Pecoraro, 250 NY 56 [1928]; Lowendahl v Baltimore & Ohio R. R. Co., 247 App Div 144 [1936], affd 272 NY 360, rearg denied 273 NY 584; Cooper v Maurer, 37 NYS2d 992 [Sup Ct, NY County 1942].) However, where the debtor transfers properly without consideration, the burden of showing solvency to avoid a finding of fraud has been said to shift to the transferor. (United States v Bushlow, 832 F Supp 574 [ED NY 1993]; United States v Orozco-Prada, 636 F Supp 1537, 1541 [SD NY 1986], affd 847 F2d 836 [2d Cir 1988].) But see Matter of American Inv. Bank v Marine Midland Bank (191 AD2d 690, 692 [2d Dept 1993], appeal dismissed 69 NY2d 875, supra), which holds that the burden of proving both insolvency and lack of fair consideration is upon the party challenging the conveyance, citing Marine Midland Bank v Murkoff (supra). However, it may deserve mention that the decision in Murkoff (supra) is explicitly grounded on proof of actual fraud under Debtor and Creditor Law § 276, not § 273.
Adoption of the UFCA in New York also changed earlier law by eliminating the requirement that a creditor reduce a claim to judgment in order to ask that a conveyance be set aside as fraudulent. (American Sur. Co. v Conner, 251 NY 1 [1929];[3] ****8 Bernheim v Burden, 253 App Div 232 [1st Dept 1938].) Indeed, it has long been held in New York that a creditor has standing to maintain an action to set aside a fraudulent transfer (bringing a separate action is no longer a procedural requirement), even though his debt may not have been in existence at the time of the transfer. (Studley v Lefrak, 66 AD2d 208, 214 [2d Dept 1979], and cases therein cited; United States v Red Stripe, 792 F Supp 1338 [ED NY 1992]; see also, Annotation, Right of tort claimant, prior to judgment, to attack conveyance or transfer as fraudulent, 73 ALR2d 749, and New York cases collected there.) Interestingly, in the main case which was the *209 focus for that annotation, Myers v Redmill (266 Ala 270, 96 So 2d 450 [1957]), the Alabama Supreme Court upheld a fraudulent conveyance finding based on a right of action arising out of an automobile accident, where the later judgment included both punitive and compensatory damages.
Numerous cases hold that terms of ordinary usage, such as debt, or creditor, may .have different meanings depending upon the particular statute and the context in which they are used. See, for example, Sunrise Indus. Joint Venture v Ditric Optics (873 F Supp 765 [ED NY 1995]), holding that a landlord’s claim for future rent gives status as a creditor for the purposes of the UFCA.
These principles lead the court to conclude that, for purposes of analysis under the UFCA as adopted in New York, respondent was both a claimant, conceptually speaking, and a future creditor, though not a present creditor, at the time when the guns were transferred. At that same time, the claim was not a present debt, although it did of course ripen into one upon the entry of judgment in respondent’s favor in the civil action.
Insolvency
The next question to be considered is whether Robert was insolvent under Debtor and Creditor Law § 271 (1) at the time of the transfer of the guns. The relevance of this question arises from the provisions of Debtor and Creditor Law § 273, which provides that a transfer by a person who is or will be thereby rendered insolvent, is fraudulent as to creditors without regard to his actual intent, if the transfer is made without fair consideration, and from the provisions of Debtor and Creditor Law §§ 275 and 276 which explicitly protect future creditors (among others). Robert’s position that the transfer of the guns was a gift to William clearly constitutes a transfer without fair consideration. As previously noted, it is not alleged that the value of the guns themselves, even using respondent’s higher asserted value, was sufficient in itself to render Robert insolvent. Rather, it is argued that Robert was chargeable on his hypothetical balance sheet at the time of the transfer, with the value of the eventual judgment in the civil action, since the acts which gave rise to the claim were complete before the transfer.
Respondent urges that Farm Stores v School Feeding Corp. (102 AD2d 249 [2d Dept 1984], affd 64 NY2d 1065 [1985]) entitles respondent to an inference of intent to defraud, in the *210 context of the insolvency claim, where the transfer is for less than fair consideration. Farm Stores certainly does stand for that proposition, and it is also clear that there was no consideration paid for the guns.
The court finds, based upon the agreed facts as reflected in the pleadings, that Robert was not shown by clear and convincing evidence to be insolvent when the guns were transferred, nor rendered insolvent by that transfer, which is what the statute would require for a finding of insolvency under the Debtor and Creditor Law. At the time of the transfer the respondent was not yet a creditor, but a future creditor. That status gives her protection under sections 275 and 276, but not under section 273. Since her unliquidated, not-yet-sued, unmatured claim was not then a debt, it did not factor into the balance sheet analysis of solvency. Farm Stores (supra) therefore does not apply on the facts of this case.
Debtor and Creditor Law § 275 — Transferor’s Belief as to Ability to Pay Future Debts
Unlike the balance sheet analysis under Debtor and Creditor Law § 273, the question under section 275 involves the transferor’s intention or belief about his or her ability to pay debts as they mature. Under this section, therefore, a conveyance may be fraudulent as to future creditors if the transferor believes that he will not be able to pay debts as they mature, even if he is solvent at the time of the conveyance. (United States v 58th St. Plaza Theatre, 287 F Supp 475 [SD NY 1968].) To the same effect, generally, see Hemphill Co. v Davis Knitting Co. (114 Pa Super 94, 173 A 704 [1934]). Under section 275 the intent which must be proved is the intent to incur debts beyond the ability to repay as the debts mature, and not an actual intent to defraud. The latter scenario, involving actual intent to defraud, is covered by section 276.
In Matter of Agretto v Easton Indus. Corp. (44 Misc 2d 654 [Sup Ct, Jefferson County 1964]) the court explored the interplay between section 275 and Totten (passbook savings) trusts. There the passbook was delivered to the debtor’s wife, and remained continuously in her possession before the eventual debtor signed a promissory note on which he later defaulted. The court noted that section 275 does protect future creditors in general, so that the fact that the account was established before the debt was incurred was not dispositive of the question; that the law of Totten trusts was also settled and *211 clear; that there was a completed irrevocable gift; and that in the Agretto case there was no indication of actual fraudulent intent. Translating that holding into terms relevant to the case at bar, one might conclude that if a future claimant such as respondent here can prove lack of consideration, which is conceded, and intent to be unable to pay debts as they come due, the transaction can be declared fraudulent in law, and undone. However, in Agretto the court decided that the claimant failed to meet its burden of proof of intent, and so the transfer was upheld.
The burden of proof under section 275 is on the claimant seeking to void the conveyance. (MFS/ Sun Life Trust-High Yield Series v Van Dusen Airport Servs. Co., 910 F Supp 913 [SD NY 1995], supra.) In that case the court found that claimant failed to show that former partners in a company knew that it could not pay its debts following a leveraged buyout. The claim therefore failed, not because, it was not a covered claim, but for failure of proof of the requisite knowledge on the part of the transferors.
Respondent’s cross petition does not initially even raise a claim under section 275, but rather grounds its two claims on insolvency and on actual fraudulent intent. Apparently this position evolved, for in the memorandum of law submitted by respondent’s counsel a section 275 claim is mentioned in passing, through the allegation that Robert "literally believed that he would incur a substantial civil liability that exceeded ability to pay.” This position is further amplified by respondent’s counsel’s affidavit dated May 6, 1997 in which Robert states under oath at trial that he believed himself to be personally insolvent at the time of testimony in January 1997. He was then asked when he first considered himself to be insolvent, and he replied, "Well, I had a good indication of the oncoming six years ago [sic]”, which would seem to refer to 1991, at least two years before the transfer of the guns. It is also clear from this portion of the trial transcript that most of the questioning of Robert concerned the financial condition of Shelly Electric, a family corporation of which Robert was one of the owners. Moreover, the questioning does not establish the time when Robert believed himself to be personally insolvent (other than at the time of testimony in 1997) or the basis for that belief. It should also be remembered that this testimony was offered during trial of the very tort claim which respondent says Robert should have known he would be unable to pay. This is inherently speculative, in view of the possibility of different *212 outcomes to the trial: Robert might have been found not liable; the jury might not have awarded punitive damages; the overall award might have been smaller, or there might have been a successful appeal.[4] While the proof offered is therefore in the right direction of showing knowledge of inability to pay debts as they mature and become due, it does not rise to the level of clear and convincing proof.
Neither party has expressed a belief that any additional fact-finding is necessary in order to resolve these conflicting claims. Based on the record presented, then, the section 275 claim fails for insufficient proof.
Debtor and Creditor Law § 276 — Actual Intent to Hinder, Delay or Defraud Creditors
Perhaps the usual situation in which section 276 comes into play is illustrated by Justice Cardozo in Shapiro v Wilgus (287 US 348, 354 [1932]), where he observed that: "A conveyance is illegal if made with an intent to defraud the creditors of the grantor, but equally it is illegal if made with an intent to hinder and delay them. Many an embarrassed debtor holds the genuine belief that if suits can be staved off for a season, he will weather a financial storm, and pay his debts in full. [Citation omitted.] The belief, even though well founded, does not clothe him with a privilege to build up obstructions that will hold his creditors at bay.” Finding that the transferor did not intend fraud, and indeed believed his actions to be quite legal, but that the transferor there did intend to delay or hinder creditors, the Court found the transfer of assets into a closely held corporation and later a "friendly” receivership to be fraudulent conveyances.
The burden of proof in a section 276 claim is on the party seeking to set aside the conveyance, and the standard of proof is by clear and convincing evidence. (United States v McCombs, 928 F Supp 261, 275 [WD NY 1995], on remand from 30 F3d 310 [2d Cir 1994]; Marine Midland Bank v Murkoff, 120 AD2d 122, supra.)
*213 Is respondent entitled to the benefit of a permissive inference of fraud[5] by Robert? The factors present are (1) an intrafamily transfer and (2) inadequate consideration. The other factors commonly present when the inference is supported, (3) secrecy and haste, (4) knowledge of creditor’s claim and debtor’s inability to pay it, can be argued both ways. The fifth factor, transfer of substantially all of the debtor’s assets, is not present. It is true that Robert gave the guns to William almost immediately after his felony arrest, but it is also true that had he not divested himself of the guns he would have been subject to their seizure. His stated reason, of acting on advice of counsel based upon the then-unfolding felony charges, is not inherently unworthy of belief. With respect to Robert’s knowledge, he was certainly aware of his own acts amounting to the intentional tort, but not of the extent of his financial exposure arising from it. It has not been shown by clear and convincing proof that he knew he would be unable to pay an eventual judgment on an immature not-yet-sued, unliquidated claim.
On the proof offered there is insufficient information to justify giving respondent a permissive inference that Robert actually intended to defraud her by transferring the guns to William.
It is therefore the judgment of the court, on the facts presented, that Robert’s gift of the guns to William was not a fraudulent conveyance as to respondent. The guns are therefore William’s property by gift and, as such, are exempt from levy or seizure to pay the judgment against Robert.

. Stepan Chem. (supra) has been criticized in other Federal circuits for failing to view Federal Comprehensive Environmental Response, Compensation, and Liability Act law as overriding provisions of State law. (Steego Corp. v Ravenal, 830 F Supp 42 [D Mass 1993].)

. ACLI Govt. Sec. v Rhoades (653 F Supp 1388 [SD NY 1987], affd 842 F2d 1287 [2d Cir 1988]) discusses the "badges of fraud” theory of presumed intent to defraud. See also, MFSI Sun Life Trust-High Yield Series v Van Dusen Airport Servs. Co., 910 F Supp 913 [SD NY 1995].) Also see comment in Marine Midland Bank v Murkoff (120 AD2d 122, supra) noting that by adopting the UFCA New York replaced the "badges of fraud” presumption with a permissive inference.

. American Sur. Co. v Conner (supra) appears to be one of the first cases in which the New York Court of Appeals construed the UFCA, adopted in 1925. In an opinion by Judge Cardozo, the Court found that "The act in its definition of a creditor seeks a rule of uniformity, and in so doing levels distinctions that at times had been the refuge of the dilatory debtor.” (251 NY 1, 7.) Coupling that observation with the holding in St. Johnland Nursing Home v Perlman (134 Misc 2d 1048 [Suffolk County Ct 1987]) that the UFCA as adopted in New York is a remedial statute, which is to be liberally construed, a Federal court held that in applying Debtor and Creditor Law §§ 270-281 the court should draw all reasonable inferences in favor of the claimant. (Amalgamated Bank v Marsh, 823 F Supp 209, 222 [SD NY 1993].)

. Indeed, in Laurie Marie M. v Jeffrey T.M. (159 AD2d 52 [2d Dept 1990]), cited by respondent as being factually similar to this case, the appellate court found a total award of $475,000 ($200,000 compensatory and $275,000 punitive damages) excessive as to both types of damages, and ordered a new trial unless plaintiff consented to a reduction to $200,000 overall, allocated equally between compensatory and punitive damages.

. Amalgamated Bank v Marsh, 823 F Supp 209, supra; Marine Midland Bank v Murkoff, supra; ACLI Govt. Sec. v Rhoades, 653 F Supp 1388, supra.