**George GASSER and Gasser Chair Company, Inc., Plaintiffs,**

v.

**INFANTI INTERNATIONAL, INC., Mark Infanti, Nancy Aponte Infanti, Vittoria Infanti, Marguerita Infanti, Mariella Infanti, Amboy National Bank, George E. Scharpf and Sanders W. Gropper, in his capacity as Receiver of Infanti International, Inc., Defendants.**

**No. 03 CV 6413(ILG).**

United States District Court, E.D. New York.

Jan. 6, 2005.

Alex Spizz, Jill L. Makower, Todtman, Nachamie, Spizz & Johns, P.C., New York, NY, for Plaintiffs.

Jay W. Freiberg, Marie A. Tieri, Katten Muchin Zavis Rosenman, New York, NY, for the Infanti defendants.

Dennis T. Kearney, Helen A. Nau, Pitney Hardin LLP, Morristown, NJ, for defendant Amboy National Bank.

Stan L. Goldberg, Platzer, Swergold, Karlin, Levine, Goldberg & Jaslow, LLP, New York, NY, for Receiver, Sanders W. Gropper.

George E. Scharpf, Old Bridge, NJ, Pro Se.

## MEMORANDUM AND ORDER

GLASSER, District Judge.

### *INTRODUCTION*

Plaintiffs Gasser Chair Company, Inc. and George Gasser (collectively, "Gasser" or "Plaintiffs") filed this case seeking, among other things, to set aside a fraudulent conveyance and to satisfy a more than $15 million judgment (the "Judgment") previously entered by this Court in favor of Plaintiffs against Infanti Chair Manufacturing Corporation ("Infanti Chair") and Vittorio Infanti ("Mr.Infanti"). Several of the defendants in this case are Mr. Infanti's children, who are shareholders of defendant Infanti International ("Infanti International"), a company founded and incorporated more than two years after entry of the Judgment (the Infanti children and Infanti International are collectively referred to as "Defendants").[1] In this case, Plaintiffs ultimately seek to impose liability upon Infanti International, as a successor to Infanti Chair, and to hold Infanti International liable on the Judgment.

Now pending before the Court is Defendants' motion for partial summary judgment on the twelfth, thirteenth, fifteenth and seventeenth causes of action in the Amended Complaint to the extent that Plaintiffs seek a declaration that a patent once owned by Mr. Infanti, which he subsequently conveyed to his daughter, Vicky, is owned by Plaintiffs because Mr. Infanti's assignment of the Patent to his daughter, without consideration, constituted a fraudulent conveyance under New York law. Defendants argue that because Mr. Infanti was President of Infanti International at the time he obtained the patent, he did not have the legal authority to transfer his interest in it to his daughter, but rather it was and still is rightfully owned by Infanti International. In opposition, Plaintiffs cross-move for summary judgment on the twelfth cause of action for fraudulent conveyance arguing that in deposition testimony, Mr. Infanti admitted that he did not assume the position of President of Infanti International until 2001—after he filed the application for the patent which was subsequently granted

---

1. Vittorio Infanti's children, who are named as defendants in this case, are Mark, Nancy Aponte ("Nancy"), Vittoria ("Vicky"), Marguerita and Mariella. The other defendants in this case are Amboy National Bank ("Amboy"), with whom, *inter alia,* Infanti International has a banking relationship, George E. Scharpf ("Scharpf"), the President of Amboy and a personal friend of Mr. Infanti, and Sanders W. Gropper, the court appointed receiver for Infanti International. (Am. Compl.¶¶ 11–13).

and recorded in the United States Patent & Trademark Office on October 24, 2000. Plaintiffs thus argue that the facts are undisputed that Mr. Infanti's purported transfer of the patent to his daughter without consideration constituted a fraudulent conveyance in Mr. Infanti's on-going effort to evade the payment of the Judgment.

For the reasons set forth below, the Court denies Defendants' partial motion for summary judgment and grants Plaintiffs' cross-motion for partial summary judgment.[2]

### BACKGROUND

The following material facts are undisputed.[3] The prior litigation between Plaintiffs, on the one hand, and Vittorio Infanti and Infanti Chair, on the other hand, which resulted in the Judgment against Mr. Infanti and Infanti Chair on August 9, 1996, after a seven-day bench trial, has been the subject of several decisions, familiarity with which is assumed. *See, e.g., Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*, 943 F.Supp. 201 (E.D.N.Y.1996), *judgment vacated by*, 95 F.3d 1165, 1996 WL 455579 (Fed.Cir.1996), *judgment entered by*, 1996 WL 683240 (E.D.N.Y. Aug.9, 1996), *aff'd*, 155 F.3d 565, 1998 WL 231180 (Fed.Cir.1998). On August 28, 1996, just nineteen days after the Judgment was entered, Infanti Chair filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of New York, bearing index number 96–18413(CBD). (Defs. Rule 56.1 Statement ¶ 1; Am. Compl. ¶ 26). Consequently, Infanti Chair terminated its business and was subsequently dissolved. (*Id.*) The bankruptcy court did not discharge the Judgment. (Am.Compl.¶ 33). Mr. Infanti also filed a voluntary personal Chapter 11 bankruptcy petition on September 18, 1996 in the United States Bankruptcy Court for the District of New Jersey. (*Id.* ¶ 23). The bankruptcy court did not discharge the Judgment as against Mr. Infanti. (*Id.* ¶ 25). On August 30, 1996, Plaintiffs caused an execution to be delivered to the United States Marshal for the District of New Jersey where Mr. Infanti resided. (Affidavit of Mark Gasser sworn to on October 27, 2004 ("Gasser Aff.") ¶ 11 & Exh. C).

Infanti International was incorporated under the laws of New York State on February 9, 1999. (Defs. Rule 56.1 Statement ¶ 2). Sometime in 1999 after Infanti International was founded, Mr. Infanti designed a chair with "releasably detachable and interchangeable cushions," which he has termed the "Versi–Chair." (*Id.* ¶ 6). On September 10, 1999, Mr. Infanti, as inventor, filed an application for a patent for the Versi Chair with the United States Patent and Trademark Office. (*Id.* ¶ 8). The United States Patent and Trademark Office issued patent number 6,135,562 for the Versi–Chair (the "Patent") on October 24, 2000. (*Id.* ¶ 9).

---

**2.** Plaintiffs filed a motion to disqualify Defendants' counsel (Docket Entry Number 122), which motion has been withdrawn.

**3.** Defendants' counsel states that the Court should disregard Plaintiffs' Rule 56.1 counterstatement of material facts, which opposes Defendants' motion and supports Plaintiffs' cross-motion because each statement was not followed by a citation to admissible evidence pursuant to Local Rule 56.1(d). However, the purpose of subdivision (d) of Local Rule 56.1 is to eliminate the need for the Court to independently examine the entire record without guidance from the parties. *Giannullo v. City of New York*, 322 F.3d 139, 145 (2d Cir.2003). Therefore, and particularly because the record presented for the pending motions is small, the Court exercises its discretion to overlook Plaintiffs' failure to comply with Local Rule 56.1(d). *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir.2001) (citations omitted).

Mr. Infanti was deposed over the course of three days in 2002 in connection with Plaintiffs' effort to enforce the Judgment. During preliminary questioning, Mr. Infanti, who was represented by counsel, acknowledged that even though English was his second language, he would inform Plaintiffs' counsel if he was unable to understand any deposition question. (Vittorio Infanti Deposition, January 16, 2002 ("Infanti 1/16/02 Dep.") at 4–5). At no time was an interpreter requested, nor did Mr. Infanti indicate a lack of understanding. Mr. Infanti testified that he was able to form Infanti International due in large part to $1,300,000 in loans that he received collectively from Amboy and Scharpf in his individual capacity.[4] (*Id.* at 38–39). When Infanti International was founded, Mr. Infanti's daughter, Vicky, was named as the corporation's first president. (Vittorio Infanti Deposition, February 21, 2002 ("Infanti 2/21/02 Dep.") at 121–22).[5] Mr. Infanti stated that during the time that Vicky was President of Infanti International, he served as its "engineering advisor." (*Id.* at 121). Mr. Infanti was absolutely "positive" that he did not become President of Infanti International until sometime in 2001. (*Id.* at 122). Mr. Infanti testified that he has "never been a shareholder or director of" Infanti International (Infanti 9/15/04 Aff. ¶ 3), nor is there any suggestion in his deposition testimony that prior to his appointment as President in 2001, he was ever an officer of Infanti International.

In an affidavit submitted in support of Defendants' motion for partial summary judgment and in opposition to Plaintiffs' cross-motion for partial summary judgment, Mr. Infanti testified that he is currently in charge of Infanti International, and has been since Infanti International was founded in 1999. (Affidavit of Vittorio Infanti sworn to November 19, 2004 ("Infanti 11/19/04 Aff.") ¶ 3). His sworn affidavit is at odds with his deposition testimony given more than two years earlier that he served as an "engineering advisor" during Vicky's tenure as President of Infanti International. (Infanti 2/21/02 Dep. at 121). Mr. Infanti claims that based on his "credit history" and the Judgment, he "was unable to sign loan documents on behalf of" Infanti International, and thus his daughter Vicky "may have been listed as President when executing a loan document on behalf of International." (*Id.* ¶ 7). His "credit history" and bankruptcy notwithstanding, loans were made to Infanti International, in reliance, presumably, upon Mr. Infanti's signature as "guarantor." With respect to his deposition testimony given in early 2002, Mr. Infanti stated that he "was asked a lot of questions using complex legal terms" and that he "did not understand those terms then, and [he is] still not certain of their meaning today." (*Id.* ¶ 8). Mr. Infanti further commented that the "Court knows" that

---

4. It appears that Scharpf did not make his first loan until two years after Infanti International was formed. *See* Letter dated December 13, 2004 from George E. Scharpf to Court.

5. Vicky Infanti submitted an affidavit in which she testified that Plaintiffs' allegation, based on Mr. Infanti's deposition testimony that she, and not her father, served as President of Infanti International in September 1999 when the Patent was created, is "wrong." (Vicky Infanti Aff. ¶¶ 2–3). Vicky

also testified that "[a]t all times since its inception in February 1999, the primary operator of the business of [Infanti] International has been Vittorio Infanti. Indeed, in September 2002[,] the Board of Directors of the Company passed a resolution approving Vittorio Infanti's previous acts as acting president and removing the acting appellation." (*Id.* ¶ 4). Nancy Infanti submitted an affidavit identical to that of her sister, Vicky. (*See generally* Nancy Infanti Aff.).

"English is not [his] first language" as he is "much more comfortable speaking in either Italian or Spanish." (*Id.* ¶ 9). Further, according to Mr. Infanti, "[a]lthough there was a lawyer present at [his] deposition, [counsel] was of no assistance to [him] because he did not object to the questions that used technical terms, and because [counsel] did not explain those terms to [Mr. Infanti] or require that the lawyer asking the questions do so." (*Id.* ¶ 10). As was previously noted, at no time did Mr. Infanti ask for clarification or claim a lack of understanding.

The inconsistencies between Mr. Infanti's affidavits and deposition testimony are of a piece with his testimony during the course of the earlier trial at which he acknowledged that he testified falsely under oath, that he sought to suborn the perjury of a deposition witness, that he sat silently by while he knew other witnesses testified falsely, that he forged documents, and which led the Court to conclude that his testimony confirmed Professor Wigmore's observation that "the moral efficacy of an oath has long ceased to be what it once was." *Gasser Chair Co.*, 943 F.Supp. at 207 (citing VI *Wigmore on Evidence* (Chadbourne Revision) § 1847).

In opposing Plaintiffs' cross-motion for partial summary judgment, Amboy submitted documents relating to, *inter alia,* two loans (in the amounts of $200,000 and $500,000) which Amboy extended to Infanti International. Two relevant documents for this motion are revolving credit notes, dated July 14, 1999 and April 18, 2000, respectively, that Vicky signed as President of Infanti International and delivered to Amboy, together with commercial security agreements and UCC–1 financing

statements, purportedly granting Amboy a perfected security interest in, among other things, the Patent. (Affidavit of Stanley J. Koreyva dated November 18, 2004 ("Koreyva Aff.") ¶¶ 3, 7 & Exhs. A & B). The revolving credit notes, loan agreements and at least one financing statement were signed by "Vittoria Infanti Valentino" as President of Infanti International.[6] (*Id.* Exhs. A & B). Mr. Infanti served as guarantor for the notes, but did not execute the guarantees in a corporate capacity but merely as "Vittorio Infanti," with a personal residence at 33 Disbrow Road, Matawan, New Jersey 07747. (*Id.*)

Mr. Infanti has never received a salary from Infanti International. (Infanti 1/16/02 Dep. at 73). All of Mr. Infanti's living expenses, including such things as his rent, utilities, cable service, and food, are paid by Infanti International in consideration for the services he renders to the corporation. (*Id.* at 58–60, 85–86).

Mr. Infanti testified that he transferred the Patent to his daughter Victoria "as a gift" at or around the time (September 10, 1999) he filed his patent application with the United States Patent and Trademark Office. (Infanti 1/16/02 Dep. at 103; Gasser Aff. Exh. D). Mr. Infanti did not receive any consideration from Vicky for the assignment of his rights in the Patent to her. (Infanti 1/16/02 Dep. at 103; Gasser Aff. ¶ 13 & Exh. D).

On September 6, 2002, the Board of Directors of Infanti International adopted resolutions that stated in relevant part that "all acts previously taken with respect to contracts of the Corporation, its Board of Directors, stockholders or Vittorio Infanti, as acting President ... from the date of the Corporation's incorporation in

---

**6.** Valentino is the family name of Vicky's husband. (Infanti 1/16/02 Dep. at 99). Two UCC–1 financing statements accompanied the July 14, 1999 credit note, one of which Vicky signed (relating to the Patent), and the other one which was signed by an individual named "Joseph Pietrzak." (Koryeva Aff. Exh. A).

the State of New York to the date of these resolutions are hereby ratified, confirmed and approved in all respects." (Tieri Aff. Exh. C). The resolutions also reflected Mr. Infanti's election to the position of President of Infanti International as of September 6, 2002, and approved an employment agreement entered into by Mr. Infanti and the corporation as of September 6, 2002, pursuant to which Mr. Infanti would serve in the position of President and Chief Executive Officer. (*Id.*). Contrary to his deposition testimony that he served as "engineering advisor" until he became president in 2001, Mr. Infanti stated in an affidavit that the September 6, 2002 resolutions "confirm[ ] what had in effect been true for the prior three and one-half years," namely, that he had been serving as "President and Chief Executive Officer of" Infanti International during this time period. (Affidavit of Vittorio Infanti sworn to September 15, 2004 ("Infanti 9/15/04 Aff.") ¶ 1).

## DISCUSSION

### A. Summary Judgment Standard

The standard for granting summary judgment is well established. Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A genuine issue as to a material fact exists when there is sufficient evidence favoring the nonmoving party such that a jury could return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law governing the case will identify those facts which are material. *Id.* at 248, 106 S.Ct. 2505. Therefore, the nonmoving party "may not rest upon the mere allegations or denials" of its pleadings; rather, its response must go beyond the pleadings to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993) (the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible"). However, in determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

### B. Defendants' Motion for Partial Summary Judgment

■ Defendants claim that the Court should grant them summary judgment on the twelfth, thirteenth, fifteenth and seventeenth causes of action in the Amended Complaint which would entitle them to an order that Infanti International is rightful owner of the Patent.[7] Defendants argue that two undisputed material facts compel the conclusion they ask the Court to reach. First, Defendants argue that it is undisputed that Mr. Infanti "has been Presi-

---

7. All of the parties recognize that Mr. Infanti's assignment of his interest in the Patent to his daughter, Vicky, is invalid. *See* Amboy Mem. at 7 & n. 3. Defendants recognize it for the wrong reasons—they do not concede that it was invalid because it was fraudulent as to creditors, but because as President he was obliged to assign it to the corporation.

dent" of Infanti International at all times since the corporation was founded on February 9, 1999. Second, Defendants state that it is undisputed that the Patent was recorded with the United States Patent and Trademark Office on October 24, 2000 at a time when Mr. Infanti was President of Infanti International. (Defs. Mem. at 6).

Before turning to the merits of Defendants' argument, the Court examines the validity of Defendants' first premise—that it is undisputed that Mr. Infanti has been President of Infanti International since its inception.[8] In support of this position, as noted above, Defendants point to Mr. Infanti's affidavit, in which he states that he has "managed the affairs of" Infanti International since February 1999 and that in September 2002, the Board confirmed "what had in effect been true for the prior three and one-half years, [and] named me President."[9] (Infanti 9/15/04 Aff. ¶ 1). Further, Amboy, through its Senior Vice President and Chief Financial Officer, Mr. Koreyva, submits two revolving credit notes, dated July 14, 1999 and April 18, 2000, and accompanying security interests and financing statements, and states that these documents were signed by Mr. Infanti acting as President of Infanti International. (Koreyva Aff. ¶¶ 3, 7).

However, the evidence presented by Defendants (and Amboy) does not support their argument that it is undisputed that Mr. Infanti was President of Infanti International in 1999 and 2000. The resolutions which the Board of Directors of Infanti International approved on September 6, 2002 provide no support for the proposition that Mr. Infanti served as President of the company between February 1999 and October 24, 2000 when he recorded the Patent with the United States Patent and Trademark Office. The resolutions make a passing reference to Mr. Infanti having served as "acting President" at some previous undefined time. For a factfinder to conclude that the resolutions establish that Mr. Infanti served as President of Infanti International at the relevant time periods (between February 9, 1999 and October 24, 2000) would therefore be an indulgence in speculation, surmise and conjecture. *See, e.g., Patterson v. County of Oneida, New York,* 375 F.3d 206, 218 (2d Cir.2004) ("his contention in this regard consists solely of surmise and conjecture, which is insufficient to overcome defendants' motion for summary judgment").

Moreover, Mr. Koreyva's statement—that the revolving credit notes for which Mr. Infanti acted as a guarantor, were signed by Mr. Infanti "acting as President"—is patently wrong. Amboy submitted a letter dated December 8, 2004 in which it acknowledged that Mr. Koreyva's affidavit on this point is at minimum, incorrect, or worse, false. The undisputed evidence shows that Vicky Infanti signed the revolving credit notes, the security interest relating to the Patent, and a UCC–1 financing statement in the capacity of President of Infanti International.[10] (Koreyva Aff. Exhs. A & B).

---

**8.** It is undisputed that the Patent was recorded with the United States Patent & Trademark Office on October 24, 2000.

**9.** Mr. Infanti's affidavit testimony is similar to that submitted by his daughters, Vicky and Nancy.

**10.** In its December 8, 2004 letter to the Court, Amboy attempts to reargue its position that, notwithstanding Mr. Koreyva's testimony, "material issues of fact exist which preclude entry of partial summary judgment in Plaintiffs' favor." *See* Letter from Helen A. Nau to Honorable I. Leo Glasser. Not only was Amboy's submission not authorized, and thus it can be disregarded for that reason alone, it

Further contradicting Defendants' assertion that it is undisputed that Mr. Infanti was President of Infanti International at all relevant times is Mr. Infanti's sworn deposition testimony that he "positively" did not serve as President of Infanti International between 1999 and 2001:

Q: You are the President of Infanti International, correct?

A: Before it be my daughter Victoria as the president.

Q: When was she the president?

A: When we started the corporation she was the president. Victoria started the corporation, but she have the daughter and she cannot go in and working. I tell you that last time.

Q: I read your transcript and I don't recall you telling me Victoria was the president.

A: First of all, we open the corporation and she was the first one because I be the engineering advisor. She come into the corporation and then I take the title to be president because they need someone to be in charge.

Q: When did you become president?

A: One year ago, less than one years.

Q: Less than a year ago?

A: Yes.

Q: We are now in February of 2002, okay. So you're saying that sometime within the last year you actually—

A: When we open the corporation, she is the president.

Q: Please, Mr. Infanti, I have to finish my question.

Q: So sometime in 2001 you became president?

A: Yes.

Q: *And before 2001 you were not the president?*

A: *No.*

Q: *You're sure about this? Mr. Moskow: Objection.*

A: *Yes.*

Q: *You're positive?*

A: *Positive.*

Q: But in 2001 you did become the president.

A: Yes.

(Infanti 2/21/02 Dep. at 121–22) (emphasis added).

█ Therefore, Mr. Infanti's deposition testimony given as part of Plaintiffs' efforts to enforce the Judgment is contradictory to Mr. Infanti's affidavit testimony submitted in support of Defendants' partial motion for summary judgment more than two years later. The inference of perjury on one occasion or the other is irresistible. Under well established precedent in this Circuit, this Court must not consider the Infanti affidavits in ruling on Defendants' partial motion for summary judgment because they are contradictory and thus demonstrably false. *See, e.g., Mack v. United States,* 814 F.2d 120, 124 (2d Cir.1987) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment"); *Raskin v. Wyatt Co.,* 125 F.3d 55, 63 (2d Cir.1997) (same); *Salovaara v. Eckert,* 1998 WL 1661141, at * 1 (S.D.N.Y. July 27, 1998) (refusing to consider affidavit filed in opposition to summary judgment motion where it con-

does not offer the Court any persuasive reason why it should not grant Plaintiffs' cross- motion for partial summary judgment as fully set forth herein.

tradicted plaintiff's "deposition testimony in another civil action").

Here, the only explanation offered for Mr. Infanti's contradictory testimony is that he does not speak English fluently and thus purportedly did not understand the questions posed to him at his deposition, and that his lawyer failed to object to improper questioning. (Infanti 11/19/04 Aff. ¶¶ 8–10). However, this explanation is neither plausible nor legitimate. At the beginning of Mr. Infanti's deposition, Plaintiffs' counsel specifically informed Mr. Infanti that if he did not understand any questions, he could ask that they be rephrased. Mr. Infanti testified that he understood this instruction. (Infanti 1/16/02 Dep. at 5–6). At no point during the questioning of Mr. Infanti about any topic, let alone his status at Infanti International, did he indicate that he did not understand Plaintiffs' counsel. Further, Mr. Infanti never asked for an interpreter at his deposition. Moreover, contrary to Mr. Infanti's affidavit testimony, his then counsel did object to questioning about his corporate position with Infanti International in 2001. (Infanti 2/21/02 Dep. at 122). In fact, the Court has thoroughly read Mr. Infanti's deposition testimony and it is clear that he had no problem understanding, and responding to, the many questions that were asked of him, many of which were technical in nature. Thus, in accordance with the law of this Circuit, Mr. Infanti's affidavits "may be properly disregarded based on his inconsistent and contradictory statements." [11] *Shabazz v. Pico,* 994 F.Supp. 460, 470 (S.D.N.Y.1998) (citations omitted).

Against this background, the Court finds that the undisputed facts reveal that Mr. Infanti did not become President of Infanti International until sometime in 2001, consistent with Mr. Infanti's sworn deposition testimony.

 Turning to the merits of Defendants' claim that Infanti International owns the Patent because it was obtained and recorded with the United States Patent and Trademark Office when Mr. Infanti served as the company's President, both parties agree that determination of the ownership of the Patent is a question of New York state law. *See, e.g., Great Lakes Press Corp. v. Froom,* 695 F.Supp. 1440, 1445 (W.D.N.Y.1987) (hereinafter *"Froom"*); cf. *E.F. Drew & Co. v. Rein-*

---

11. Vicky and Nancy Infanti submit affidavits that support Mr. Infanti's affidavit testimony that he was President of Infanti International since its founding. In the context of summary judgment, it is my duty to assess the facts presented in a light most favorable to the non-moving party, but not to weigh the credibility of the parties. However, when the testimony of the witnesses in affidavits and depositions are so plainly inconsistent and contradictory that their credibility is severely undermined, the Court may reject the factually improbable allegations and dismiss the complaint. *Shabazz,* 994 F.Supp. at 470 (citing *e.g., Denton v. Hernandez,* 504 U.S. 25, 32–33, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992)). Accordingly, given Vicky's signature on the revolving credit notes as President of Infanti International at least as of April 18, 2000, *see* Koreyva Aff. Exhs. A & B, I find that her affidavit as well as her sister's do not raise a material issue of fact as to whether Mr. Infanti served as President of the company through the time that the Patent was recorded with the United States Patent and Trademark Office on October 24, 2000. This is also true regarding Mr. Koreyva's statement in his affidavit that "[i]n or about January 2000, Infanti International, through its *President* Vittorio Infanti, entered into [sic] verbal lease on behalf of Infanti International to occupy a portion of Amboy's property." (Koreyva Aff. ¶ 6) (emphasis added). At that time, it was and should have been obvious to Amboy that Mr. Infanti was not Infanti International's President since his daughter had signed the revolving credit notes entered into between Amboy and Infanti International, dated July 14, 1999 and April 18, 2000, respectively, in her capacity as President of the corporation.

hard, 170 F.2d 679, 682 (2d Cir.1948) (federal common law and state law are virtually identical with respect to patent ownership) (L.Hand, J.).

■ The general rule is that an individual owns the patent rights in the subject matter of which he is an inventor even though he conceived of the subject matter or reduced it to practice during the course of employment. See Cahill v. Regan, 5 N.Y.2d 292, 296–97, 157 N.E.2d 505, 184 N.Y.S.2d 348 (1959); Restatement (Second) of Agency § 397, comment a (even where "one is employed . . . to work in a particular line in which he is an expert, there is no inference that inventions which he makes while working belong to the employer"). Thus, the "mere existence of an employer-employee relationship does not of itself entitle the employer to an assignment of any inventions which the employee devises during the employment." United States v. Dubilier Condenser Corp., 289 U.S. 178, 182, 53 S.Ct. 554, 77 L.Ed. 1114 (1933). There are at least two exceptions to this general rule which may be applicable in this case.

■ First, an officer or director's fiduciary duty may include the obligation to assign a patent to the corporation if the officer or director invented the subject matter of the patent while employed by the corporation and the invention relates to the business of the corporation. This rule was articulated early on in Mechanical Plastics Corp. v. Thaw, 197 U.S.P.Q. 651, 654 (N.Y.Sup.1977) (hereinafter "Thaw"), and later followed by a federal district court interpreting New York law, see Froom, 695 F.Supp. at 1447–48.[12]

In Radiant Energy Corp. v. Roberts–Gordon, Inc., 639 N.Y.S.2d 237, 238, 225 A.D.2d 1025, 1025 (4th Dep't 1996), the appeals court cast doubt on this principle by stating that "New York has not adopted the rule announced in" such cases as Froom, and held that officers of a corporation did not have the obligation to assign patents they invented during their employment because they did not have "sufficient control over the management of the corporation or exercised the power of a president or chief executive officer to come within that rule." Nonetheless, the only support that the court in Radiant Energy Corp. found for the conclusion it reached was the New York Court of Appeals decision in Cahill, 5 N.Y.2d at 296–97, 184 N.Y.S.2d 348, 157 N.E.2d 505. Cahill, however, did not address the issue whether corporate officers and directors have a fiduciary duty to assign patents they invent while working for a company so as not to waste a corporate opportunity. Thus, the holding in Radiant Energy Corp. is not supported by even the thinnest reed. The better reasoned decisions, including Froom and Thaw, hold that an officer or director of a corporation generally has a fiduciary duty to assign patents to that corporation. See also Golden Eagle/Satellite Archery, Inc. v.Epling, 244 A.D.2d 959, 959–60, 665 N.Y.S.2d 169 (4th Dep't 1997) (president and chief executive officer must assign patents to corporation where he "worked on the patent using plaintiff's employees and computers"); Maritime Fish Prods., Inc. v. World Wide Fish Prods., Inc., 100 A.D.2d 81, 88, 474 N.Y.S.2d 281, 285 (1st Dep't 1984) (em-

12. In Froom, 695 F.Supp. at 1447–48, the defendant was hired as vice-president of sales and was later promoted to president and chief executive officer of the corporation. The court concluded that, by virtue of his position, and because he led the corporation to believe that the work done on his invention was being done for and would belong to the company, the defendant had a fiduciary duty to assign to the corporation his rights in the invention that he had developed during his tenure.

ployee "is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties"), *appeal dismissed,* 63 N.Y.2d 675 (1984); *cf. Burden v. Burden Iron Co.,* 39 Misc. 559, 80 N.Y.S. 390, 395 (N.Y.Sup.1903) (president not required to assign patent where he did not receive a salary "and was under no obligation to perform any such services for the company, or to give to it the results of his inventive genius"); *Tulumello v. W.J. Taylor Int'l Constr. Co.,* 84 A.D.2d 903, 446 N.Y.S.2d 673, 674 (4th Dep't 1981) ("Considering that Taylor Co. [the complaining corporation] was a close corporation completely run by Taylor and that Tulumello [the alleged diverter] was only a nominal officer thereof, we find no basis to subject him to the strict fiduciary duty of a responsible officer"); *Smart Parts, Inc. v. WDP Ltd.,* 2004 WL 1900411, at *11 (D.Or. Aug.23, 2004) ("I decline to hold that a non-employee, minority shareholder, who did not sign an agreement to assign his patent rights, has an implied obligation to do so").

In any event, the documentary and credible testimonial evidence drive the Court to conclude that it was his daughter and not Mr. Infanti who was President of Infanti International when he created his invention or had the Patent for it recorded, and he had no duty, fiduciary or otherwise, to assign his interest in the Patent to the corporation.

■ Second, where an employee is hired to invent something or solve a particular problem, the invention of the employee, and the Patent for it, belongs to the employer. *See Cahill,* 5 N.Y.2d at 296, 184 N.Y.S.2d 348, 157 N.E.2d 505 (citing *Standard Parts Co. v. Peck,* 264 U.S. 52, 44 S.Ct. 239, 68 L.Ed. 560 (1924)). The Court notes, however, that Defendants have not

argued or presented any evidence that Mr. Infanti was an "employee" between the time Infanti International was founded and when the Patent was recorded with the United States Patent and Trademark Office. For example, Mr. Infanti's deposition testimony makes clear that Infanti International did not pay him a salary, but paid all of his living expenses in return for the work he performed on behalf of the corporation. *See* Infanti 1/21/02 Dep. at 58. The corporation did not pay any taxes for which they would have been liable had Mr. Infanti been regarded as an employee. *Id.* at 73. Therefore, the undisputed evidence compels the conclusion that Infanti International did not regard Mr. Infanti as an employee, and *Burden, supra,* is exquisitely apposite. *See Burden,* 80 N.Y.S. at 395.

Further, Mr. Infanti testified that he served as Infanti International's "engineering advisor" before he became President and Chief Executive Officer sometime in 2001. (Infanti 2/21/00 Dep. at 121). Defendants have not presented any evidence to the contrary, nor have they raised a genuine issue of material fact, as to whether he was hired to invent a chair or "given the task of devoting his efforts to a particular problem." Thus, Defendants' partial summary judgment motion is denied.

## C. Plaintiffs' Cross–Motion for Partial Summary Judgment

Plaintiffs cross-move for summary judgment on the twelfth cause of action to the extent that, under the New York Debtor and Creditor Law ("DCL"), they claim that Mr. Infanti's assignment of his interest in the Patent to his daughter Vicky was constructively fraudulent and therefore it should be set aside or disregarded under DCL §§ 273, 273–a and 278(1).[13]

---

13. DCL is the New York state version of the Uniform Fraudulent Conveyance Act. The an-

Each of these provisions is discussed in turn.

■■ DCL § 273 provides that "[e]very conveyance[14] made and every obligation incurred by a person who is ... insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." While the burden of proving insolvency and lack of fair consideration is generally on the party challenging the conveyance, "where a transfer occurs without consideration, the defendant is presumed to have been insolvent at the time of the transfer and may only rebut the presumption by proving its continued solvency after the date of the transfer." *In re Flutie New York Corp.*, 310 B.R. 31, 54 (Bankr. S.D.N.Y.2004) (citing *RTC Mortg. Trust 1995–S/N1 v. Sopher*, 171 F.Supp.2d 192, 199 (S.D.N.Y.2001)). An individual is deemed to be "insolvent" when the "present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." N.Y. Debt. & Cred. Law § 271. "A claim is said to have matured ... when it 'has become absolutely due without contingency, although not necessarily liquidated nor presently payable.'" *Shelly v. Doe*, 173 Misc.2d 200, 204, 660 N.Y.S.2d 937, 940 (N.Y.Co.Ct.1997) (citing Black's Law Dictionary at 1079), *aff'd as modified*, 249 A.D.2d 756, 671 N.Y.S.2d 803 (3d Dep't 1998). A claim under DCL § 273 does not require proof "of an intent to deceive or any of the traditional elements of fraud." *Intuition Consol. Group, Inc. v. Dick Davis Publishing Co.*, 2004 WL 594651, at *3 (S.D.N.Y. Mar.25, 2004) (citations omitted).

■ In addition, in cases where a conveyance has been made from one family member to another and the facts relating to the type of consideration are within their exclusive control, the defendant has the burden of proving the adequacy of the consideration. *United States v. McCombs*, 30 F.3d 310, 324 (2d Cir.1994). The Second Circuit has explained that "fair consideration" under the DCL requires the following: (1) the assignee of the debtor's property "must either (a) convey property in exchange or (b) discharge an antecedent debt in exchange; (2) such exchange must be a fair equivalent of the property received; and (3) such exchange must be in good faith." *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1058–59 (2d Cir.1995) (internal quotations omitted). Thus, the hallmarks of a valid conveyance are an exchange made in return for a fair equivalent and good faith. *See, e.g., In re White Metal Rolling and Stamping Corp.*, 222 B.R. 417, 430 (Bankr.S.D.N.Y.1998) ("a transfer made by an insolvent debtor to an affiliate or insider in satisfaction of an antecedent debt lacks good faith and is constructively fraudulent") (citations omitted).

tecedents to these statutes are steeped in history. *See In re Kovler*, 249 B.R. 238, 260 (Bankr.S.D.N.Y.2000) ("As expressed in 1570 in Statute 13 Elizabeth, Ch. 5, the ultimate source of modern fraudulent conveyance law," the very purpose of the doctrine is: "For the avoiding and abolishing of feigned, covinous and fraudulent feoffments, gifts, grants, alienation, conveyances, bonds, suits, judgment and executions ... which ... are devised and contrived of malice, fraud, covin, collusion, or guile, to the end purpose and intent, to delay, hinder or defraud creditors and others of their just and lawful actions, suits, debts, accounts, damages, penalties, forfeitures, heriots, mortuaries and reliefs").

14. "Conveyance" under the DCL is defined broadly and includes the assignment of rights in a patent from one person to another. N.Y. Debt. & Cred. Law § 270.

■ Here, there is no dispute that Mr. Infanti is liable to Plaintiffs for the Judgment, and has not paid any or at best little of it to date. As such, Mr. Infanti is and was "insolvent" as that term is defined in the DCL when he assigned his interest in the Patent to his daughter, Vicky, without consideration. Moreover, regardless of who bears the burden of proof on the issue of whether Vicky paid "fair consideration" for the assignment of Mr. Infanti's rights in the Patent, the facts are undisputed that none was given. Indeed, Defendants themselves argue that the assignment— which Mr. Infanti characterized as a "gift"—is invalid because the Patent is owned by Infanti International and therefore Mr. Infanti did not have any rights in the Patent to assign to his daughter. (Defs. Mem. at 6). However, as set forth above, the undisputed facts reveal that at the time when Mr. Infanti assigned the Patent to his daughter, Infanti International did not have any rights to the Patent, and Mr. Infanti was its sole owner. Therefore, the Court concludes that Mr. Infanti's assignment of the Patent to Vicky lacked any consideration, let alone "fair consideration," under the DCL. Accordingly, Plaintiffs' cross-motion for partial summary judgment on their claim under DCL § 273 is granted.

The Court also finds that Plaintiffs have demonstrated that no genuine issue of material fact exists precluding the grant of summary judgment on their claim under DCL § 273–a. DCL § 273–a "fleshed out the meaning of a fraudulent conveyance by stigmatizing certain conveyances made during litigation." *Orr v. Kinderhill Corp.*, 991 F.2d 31, 35 (2d Cir.1993). Under that statute, "[e]very conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action

without regard to the actual intent of the defendant if, after the final judgment for the plaintiff, the defendant fails to satisfy the judgment." N.Y. Debt. & Cred. Law § 273–a. Here, as discussed above, Mr. Infanti was the Plaintiffs' judgment debtor in the sum of more than $15 million, and his assignment of the Patent to his daughter was without "fair consideration." *See, e.g., Barnett v. Bell*, 213 A.D.2d 276, 276–77, 623 N.Y.S.2d 590, 590 (1st Dep't 1995) (affirming summary judgment to plaintiff on claim under DCL § 273–a where defendant purported to convey property four days after verdict was rendered against him); *Kavanagh v. Rubin*, 230 A.D.2d 892, 893, 646 N.Y.S.2d 868, 869 (2d Dep't 1996) (husband's transfer of realty to wife's estate "without fair consideration, at a time when a money judgment had been entered against him" and at a time when the judgment was not satisfied constitutes a fraudulent conveyance under DCL § 273–a). Therefore, the Court grants Plaintiffs' partial motion for summary judgment on this claim.

DCL § 278 allows creditors, such as Plaintiffs, who have established that a conveyance is fraudulent and are in possession of a mature claim, to seek an order from the Court to "set aside" the conveyance "to the extent necessary to satisfy his claim" or to "[d]isregard the conveyance and attach or levy execution upon the property conveyed." The purpose of the remedy fashioned by DCL § 278 is to grant the creditor the right "to be paid out of assets to which he is actually entitled and to set aside the indicia of ownership which apparently contradict that right." *Hearn 45 St. Corp. v. Jano*, 283 N.Y. 139, 143, 27 N.E.2d 814, 816–17 (1940) (citations omitted). Here, it is undisputed that Vicky Infanti was not a bona fide purchaser of Mr. Infanti's rights in the Patent, which would be a defense to Plaintiffs' applica-

tion to set aside the conveyance if she were. N.Y. Debt. & Cred. Law § 278(1). Moreover, contrary to Amboy's arguments, there is no competent evidence in the record to raise a material issue of fact that Mr. Infanti was President of Infanti International when he developed the Patent and had it recorded with the United States Patent & Trademark Office. (Amboy Mem. at 5–9). As such, Plaintiffs have met their burden to prove that, as a matter of law, they are entitled to an order setting aside Mr. Infanti's assignment of the Patent to Vicky as a fraudulent conveyance to the extent necessary to satisfy the Judgment. *See, e.g., McCarthy v. Sessions,* 170 A.D.2d 25, 28, 572 N.Y.S.2d 749, 751 (3d Dep't 1991); *BSL Dev't Corp. v. Aquabogue Cove Partners, Inc.,* 212 A.D.2d 694, 696, 623 N.Y.S.2d 253, 255 (2d Dep't 1995) (summary judgment granted to creditors under DCL § 273 and the trial court "properly directed the Clerk ... to set the conveyance aside until [the creditor's] money judgment against the [debtor] was satisfied"), *leave to appeal denied,* 85 N.Y.2d 811, 631 N.Y.S.2d 287, 655 N.E.2d 400 (1995); *Orr,* 991 F.2d at 36 ("the transaction was not supported by fair consideration, and accordingly, the district court properly set it aside as a fraudulent conveyance").

Plaintiffs also seek relief under DCL § 278(1)(b), which would allow them to "[d]isregard the conveyance and attach or levy execution upon the property conveyed." Amboy objects to the granting of this relief on two grounds. First, it argues that Infanti International owns the Patent and thus Plaintiffs' delivery of the execution to the Marshal relating to the Judg-

ment obtained against Mr. Infanti "does not impact Infanti International's right in the" Patent. (Amboy Mem. at 9). However, as set forth above, since the Patent was owned by Mr. Infanti and not Infanti International (there is no evidence that Mr. Infanti or Vicky ever transferred a valid interest in the Patent to Infanti International), this argument lacks merit.

Second, Amboy argues that it has a superior claim to the Patent because of the security agreement and UCC–1 financing statement that was recorded with the New York Department of State on September 23, 1999. (Amboy Mem. at 9–10). However, since, as stated above, Infanti International never owned the Patent, it, as a debtor under the Uniform Commercial Code, could not transfer any interest in the Patent to Amboy. *See* N.Y. U.C.C. § 9–203(b)(2) (a security interest is enforceable against a debtor, like Infanti International, only where the debtor "has rights in the collateral or the power to transfer rights in the collateral to a secured party"); *Emergency Beacon Corp. v. Glatzer,* 665 F.2d 36, 40 (2d Cir.1981) ("if the debtor has no rights in the collateral, no security interest in that collateral comes into existence") (citation omitted).[15]

In this respect the Court notes that Amboy has not submitted any evidence that it even has a valid security interest in the Patent because pursuant to the letter Amboy received from the New York Department of State's office, the financing statement lapsed on September 23, 2004— almost two months after Amboy's submission of opposition papers to Plaintiffs' cross-motion for partial summary judg-

---

15. In other words, at the time the security agreement was entered into by Amboy and Infanti International, the Patent was owned by Mr. Infanti, as he was not an officer or director of Infanti International, he had never transferred it nor was he obliged to transfer it to Infanti International, and his purported transfer of the Patent to his daughter Vicky was invalid. *See In re Faraldi,* 286 B.R. 498, 503 (Bkrtcy.E.D.N.Y.2002) ("Under New York law, fraudulent transfers are void, not voidable") (citations omitted).

ment. Koreyva Aff. Exh. A (letter dated September 23, 1999 sent to Amboy from New York Department of State Uniform Commercial Code Division). Amboy has provided no indication that it filed the necessary paperwork to continue its purported security interest in the Patent. (*Id.*) Therefore, in the alternative, the Court finds that Plaintiffs are entitled to attach or levy execution on the Patent under DCL § 278(1)(b).

## D. Plaintiffs' Remedy

As set forth above, Plaintiffs are entitled to summary judgment on their twelfth cause of action to declare the conveyance of the Patent from Mr. Infanti to his daughter, Vicky, fraudulent, and to also levy execution on the Patent. Realizing that interest in the Patent cannot be secured through execution,[16] Plaintiffs moved the Court by order to show cause (filed one week after briefing was concluded on the motions for summary judgment) for an order pursuant to Fed.R.Civ.P. 69(a), directing delivery of the Patent to the United States Marshal under N.Y. C.P.L.R. § 5225(a), or in the alternative, for the appointment of a receiver under N.Y. C.P.L.R. § 5228(a).[17]

Three days before the return date on Plaintiffs' order to show cause, the Court received a letter dated December 13, 2004, from Scharpf, acting *pro se*, in which he opposed Plaintiffs' application.[18] He claimed that to secure the repayment of loans he made to Infanti International in the amount of $835,000 between September 10, 2001 and October 17, 2002, Mr. Infanti and his daughter, Vicky, assigned their interests in the Patent to him. That assignment was recorded in the United States Patent and Trademark Office on October 8, 2002 in addition to a financing statement recorded in the Richmond County Clerk's office on March 19, 2002. Scharpf thus claims a valid security interest in the Patent superior to any claim to it asserted by Plaintiffs.

Perhaps due to the lateness of his letter, Plaintiffs did not address Scharpf's claim

---

**16.** Due to their composition, courts have considered patents inaccessible as ordinary property. For example, in *Ager v. Murray*, 105 U.S. (15 Otto) 126, 26 L.Ed. 942 (1881), the Supreme Court examined the difficulties of selling a patent upon an execution at law. However, in response to these difficulties, state legislatures have enacted legislation allowing a judgment creditor to access intellectual property rights of a judgment debtor, including in New York. *See generally Newton v. Buck*, 77 F. 614, 615 (2d Cir.1896) ("notwithstanding [that] a patent cannot be seized and sold on execution, it can be reached by a creditors' bill, and applied to satisfy a judgment against the owner, and a transfer by him be compelled for that purpose by the court").

**17.** By letter dated December 13, 2004, Defendants' counsel informed the Court that he believed that it was premature to respond to Plaintiffs' application—even though Defendants were given an opportunity to do so in the order to show cause—since at the time of

counsel's letter, the motions for partial summary judgment were still pending. *See* Letter from Jay W. Freiberg to Honorable I. Leo Glasser. Defendants failed to submit any opposition papers to Plaintiffs' order to show cause application. Following oral argument on the pending motions on December 17, 2004, and other than Mr. Scharpf, no party has submitted any opposition papers to Plaintiffs' order to show cause, or even asked the Court to issue a briefing schedule.

**18.** Scharpf attached the security agreements to his letter along with four collateral promissory notes which document the loans that Scharpf extended personally to Infanti International. Scharpf did not submit opposition papers to Plaintiff's cross-motion for summary judgment, but through his letter, opposed Plaintiffs' application filed by order to show cause relating to the process that should be used to sell the Patent on Plaintiffs' behalf and how the proceeds of that sale should be distributed to Plaintiffs.

prior to the hearing on December 17, 2004, nor has his claim been addressed thereafter. Prudence and the interests of finality dictate that a conclusive determination of those competing claims be made. Towards that end, a hearing will be held at 10:00 am on January 21, 2004. Written submissions in support of their respective positions shall be simultaneously served and filed on or before 3:00 pm on January 18, 2004.

### CONCLUSION

For the foregoing reasons, Defendants' partial motion for summary judgment on the twelfth, thirteenth, fifteenth and seventeenth causes of action in the Amended Complaint is denied and Plaintiffs' cross-motion for partial summary judgment on the twelfth cause of action in the Amended Complaint is granted. Pending the hearing on January 21, 2004 and determination of Plaintiffs' motion, pursuant to Fed. R.Civ.P. 69(a), for an order directing the assignment of the Patent to the United States Marshal under N.Y. C.P.L.R. § 5225(a) or, in the alternative, the appointment of a receiver to take assignment of the Patent under N.Y. C.P.L.R. § 5228(a), Vittorio Infanti and George E. Scharpf continue to be enjoined from transferring, disposing, assigning, encumbering or permitting any liens upon the Patent or upon any right, title and interest that they have in the Patent.

SO ORDERED.